**GENERAL TELEPHONE COMPANY OF the SOUTHWEST, a Corporation, Plaintiff-in-Error,**

v.

**The STATE of Oklahoma et al., Defendants-in-Error.**

No. 44393.

Supreme Court of Oklahoma.

May. 11, 1971.

Lee B. Thompson, Cantrell, Douglass, Thompson & Wilson, Oklahoma City, John Robert Jones, William R. White, Power, Jones, Bell & Schneider, Columbus, Ohio, Hubert M. Preston, San Angelo, Tex., for plaintiff in error.

Jack A. Swidensky, Gen. Counsel, Corp. Commission, Oklahoma City, for defendants in error.

JACKSON, Justice:

This is an appeal by General Telephone Company of the Southwest from an order of the Corporation Commission denying a requested rate increase.

General operates 53 telephone exchanges in relatively small municipalities in Oklahoma. In 1968, with the acquisition of Southwestern States Telephone Company, General approximately doubled in size. Its present rates in Oklahoma were approved by the Corporation Commission in 1961 for Southwestern and in 1963 for General. In both cases the rates approved by the Commission provided for a rate of return (ratio of net income to rate base) of 6.125%.

After hearing evidence presented by General and by the Commission's staff the Commission entered an order denying the requested rate increase.

In paragraph 8 of its findings and conclusions the Commission found:

"Evidence was introduced as to the value of the intrastate plant of Applicant in Oklahoma, both on the basis of original cost depreciated; and on the so-called trended cost; and on various combinations thereof. This evidence establishes that the value of the intrastate plant of Applicant located within the State of Oklahoma does not exceed $19,600,000.-00, including approximately $19,100,000.-00 as original cost of plant, less accrued depreciation, and the approximate sum of $300,000.00 in materials and supplies on hand for use in Oklahoma, $175,000.-00 in working capital and some $15,000.-00 in property held for future use. The Commission staff challenged a portion of

this amount as not properly to be considered for rate making purposes."

In paragraph 11 of its findings the Commission found that General is earning, and will earn, a rate of return upon its plant investment in Oklahoma of at least 6.74%.

17 O.S.1961, Sec. 137, provides that in regulating telephone rates the Commission shall prescribe and enforce rates to provide a fair return on the fair value of the property devoted to public service in this state. It is noticed, however, that the Legislature did not establish any formulae or guidelines to assist the Commission in arriving at "the fair value" of property devoted to the public service in Oklahoma.

In Pioneer Telephone and Telegraph Co. v. Westenhaver, 29 Okl. 429, 118 P. 354, it was said that using only the original cost less depreciation to establish a rate base could be grossly unfair either to the rate paying public or to the utility company, depending upon whether the price of materials and installation costs had gone up or down since the original investment.

In Oklahoma Natural Gas Co. v. Corporation Commission (1923), 90 Okl. 84, 216 P. 917, we approved the following formula for establishing a rate base (fair value):

"In determining the present fair value of the property of a public utility, neither original cost nor reproduction cost new, considered separately, is determinative, but consideration should be given to both original cost and present reproduction cost, less depreciation, together with all the other facts and circumstances which would have a bearing upon the value of the property, and from a consideration of all these a fair present value is to be determined."

In Southwestern Bell Telephone Co. v. State (1951), 204 Okl. 225, 230 P.2d 260, we held in effect that any method of establishing a rate base was proper so long as the end result was fair.

Except for the procedure used in the Southwestern Bell case this court, and the Commission, has generally followed the formula set forth in the Oklahoma Natural Gas Company case. So far as we have been able to determine the formula used in the Oklahoma Natural Gas case, commonly called the "fair value rule", has been generally followed in most other jurisdictions. 43 Am.Jr. Public Utilities and Services, Sections 105, 110, and 112.

General presented evidence showing that the original cost of its telephone system in Oklahoma, less depreciation as of June 30, 1969, was $19,092,531.00. It also presented evidence purportedly showing the value of the system based upon reproduction cost as of June 30, 1969, less depreciation, at $21,751,002.00. General then averaged the original and reproduction costs, less depreciation, and concluded that the rate base or fair value of its intrastate plant in Oklahoma is $20,421,767.00.

General's evidence tending to show reproduction costs of its system was not based upon actual cost of poles, wires, telephones, and other installation costs as of June 30, 1969, but (trended cost) was determined by adjusting the original cost figures in accordance with a mathematical factor based on the Durable Goods Index published by the Bureau of Labor Standards. The object was to arrive at a figure representative of the reproduction cost new, less a proportional amount for depreciation, thus reflecting the effects of inflation.

It has been held that trended cost is equivalent to reproduction cost. City of Pittsburg v. Public Utility Commission, 187 Pa.Super. 341, 144 A.2d 648. In Southwestern Bell Telephone Co. v. State, 181 Okl. 246, 71 P.2d 747, we held under the facts presented in that case that a sudden increase in the cost of telephone system equipment was not necessarily to be considered in arriving at reproduction cost.

■ From our examination of the record and the Commission's findings we are unable to determine that the Commission gave any consideration to the trended cost based upon the Durable Goods Index, or any consideration to reproduction cost new, less depreciation. In this connection,

however, it does appear that replacement cost of desk and wall telephones is less now than at the time the system was originally installed. Without offsetting evidence, or other explanatory evidence, we must conclude that the increased cost of materials as reflected by the Durable Goods Index applies to some of the materials and services required to construct a new telephone system.

 The rate base as determined by the Commission appears to have been established by considering only the original cost of the system, less depreciation. The record, and the Commission's findings, do not disclose why inflationary trends and cost of reproduction, have not increased the fair value of General's utility properties in Oklahoma.

As noted, General produced evidence showing the fair value of its intrastate plant as of June 30, 1969, to be $20,421,767. However, this figure must be reduced to some extent since the evidence shows that "trended cost" is not applicable to desk and wall telephones.

General's evidence shows that as of June 30, 1969, its projected income for the following year would be $5,807,088; that its projected operating expenses for the same period would be $4,603,999; and that its net operating income for the same period would be $1,203,089; and that its rate of return (based on the foregoing figures) would be 5.75%.

The Commission found that General's operating revenues as of June 30, 1969, would be $5,843,000, and that its net operating income after payment of taxes and depreciation would be at least $1,320,496. Based upon these figures it concludes that General's rate of return on its investment of $19,600,000 would be 6.74%.

We are unable to determine how the commission concluded that General's net operating income would be $1,320,496. This exceeds General's estimate of net income by $117,407.

By its findings and order the commission has impliedly allowed General a rate of re-

turn on its Oklahoma investment of 6.74%. The Commission authorized a rate of return of 6.125% on the property involved herein in 1963.

The evidence discloses that interest rates on investments are higher than formerly. There is also evidence that public utility regulatory bodies in other jurisdictions have authorized rates of return on similar investments in excess of 7%. While these decisions are not controlling in Oklahoma they are indicative of a permitted return on similar risks. Bluefield Water Works and Improvement Co. v. Public Service Commission, 262 U.S. 679, 43 S.Ct. 675, 67 L.Ed. 1176.

Since the Commission did not give any substantial consideration to reproduction cost, less depreciation in establishing the rate base, it cannot be said that the findings and conclusions of the Commission are sustained by the law and the evidence as required by Article 9, Section 20, Oklahoma Constitution.

The order is reversed and this cause is remanded to the Commission.

All the Justices concur.