LONE STAR GAS COMPANY, A DIVISION OF ENSERCH CORPORATION, Appellant,

v.

The CORPORATION COMMISSION OF the STATE OF OKLAHOMA, and the State of Oklahoma, Appellees.

No. 54341.

Supreme Court of Oklahoma.

June 29, 1982.

Joe N. McClendon, Dallas, Tex., David W. Holden, J. Michael Medina, Holliman, Langholz, Runnels & Dorwart, Tulsa, for appellant.

Robert D. Stewart, Jr., Eddie M. Pope, Patrick D. Shore, Oklahoma City, for appellees.

BARNES, Vice Chief Justice:

On November 30, 1977, Lone Star Gas Company (Lone Star), a natural gas utility, filed an application for approval of a fuel adjustment clause, pursuant to 17 O.S.Supp. 1977 § 250 et seq., (Cause No. 26220) with the Corporation Commission (Commission). On October 23, 1978, Lone Star applied for a general rate increase, (Cause No. 26470). The actions were consolidated by the Commission under Cause No. 26470, and set for hearing.

At the hearing the main question was the proper rates to be set for gas sold by Lone Star. During the hearing, Lone Star sought to have a "fair value" rate base; to have 11.1% rate of return on rate base (which translates as a 16% rate of return on equity); to have additional allowances made for inflation, attrition, erosion and regulatory lag; to have emergency purchases included as a part of their expenses and fuel adjustment clause; and to have the expenses of the rate case be included as a normal expense.

On September 28, 1979, the Commission issued Order No. 157978 which inter alia, used an original cost rate base, granted a rate of return of 10.05%, which would allow a 13.25% return on equity, did not make any explicit allowances for inflation, attrition, erosion and regulatory lag, did not include emergency purchases of natural gas, and did not include rate case expenses as part of recoverable expenses, and ordered a $1,169,-537. reduction in the rates of Lone Star.

Lone Star appealed said order and alleges that the Commission erred in not giving substantial consideration to reproduction costs as part of the fair value of the Oklahoma System Rate Base; the Commission erred in failing to grant Lone Star a reasonable rate of return and such rate of return is therefore confiscatory; the Commission erred in not giving consideration to

the factors of attrition, erosion and regulatory lag in determining Lone Star's rate of return; the Commission erred in excluding emergency gas purchases from test year computations and from Lone Star's proposed purchase gas adjustment clause and the Commission erred in failing to include a portion of the rate case expenses in the test year operating expenses.

In its reply brief, Lone Star abandoned its allegation of error concerning the emergency gas purchase issues stating that such issues "are moot and need not be considered by this court." We therefore will only address the other four propositions of error.

## I.

Lone Star contends that the Commission failed to give substantial consideration to reproduction costs and thereby committed reversible error. In *Oklahoma Natural Gas Company v. Corporation Commission*, 90 Okl. 84, 216 P. 917 (1923), we approved the following fair value rule for determining a rate base:

"In determining the present fair value of the property of a public utility, neither original cost nor reproduction cost new, considered separately, are determinative, but consideration should be given to both original cost and present reproduction cost, less depreciation, together with all the other facts and circumstances which would have a bearing upon the value of the property, and from a consideration of all of these a fair present value is to be determined." *Accord: Tecumseh Gas System, Incorporated v. State*, 565 P.2d 356 (Okl.1977); *General Telephone Company of Southwest v. State*, 484 P.2d 1304 (Okl.1971); *McAlester Gas and Coke Company v. Corporation Commission*, 102 Okl. 118, 227 P. 83 (1924).

In *Pioneer Telephone and Telegraph Company v. Westenhaver*, 29 Okl. 429, 118 P. 354 (1911) we said that using only the original cost less depreciation to establish a rate base could be grossly unfair either to the rate paying public or to the utility company, depending upon whether the price of materials and installation costs had gone up or down since the original investment.

The Commission's witnesses relied exclusively on an original cost base methodology and presented no testimony or evidence as to the consideration to be accorded reproduction costs in the calculation of a fair value rate base. The Commission in its order made no mention of Lone Star's reproduction costs evidence and phrased the choice presented to it as being one between two opposing computations of original costs. Said order stated that "applicant shows a year-end level rate base of $13,765,749. this compares to the staff figure of $10,722,360." The Lone Star rate base cited was Lone Star's original cost rate base.

■ Lone Star presented evidence showing that the original cost of its Oklahoma distribution system, less depreciation as of June 30, 1978 (the end of the test year) was $13,765,749. It also presented evidence using trended original cost and determined the reproduction cost of Lone Star's plant as of June 30, 1978 at $39,380,466. Trended original cost is equivalent to reproduction cost, *General Telephone Company v. State*, 484 P.2d 1304, 1305 (Okl.1971); *Pittsburgh v. Public Utility Commission*, 187 Pa.Super. 341, 144 A.2d 648 (1958); 64 Am.Jur.2d 648 (1958); 64 Am.Jur.2d, "Public Utilities" § 149. Lone Star defined trended original cost as "the cost that would have been experienced on June 30, 1978 (the end of the test year) in reproducing certain properties of Lone Star Gas Company that were used or useful at that date to provide gas service to its customers." Lone Star determined trended original cost by applying cost trending factors derived from the Handy Whitman Indexes for the South General Division of the United States to the gross addition of properties by years. Lone Star then averaged the original and reproduction costs, giving each equal weight, and arrived at a rate base or fair value of its Oklahoma distribution and transmission system of $26,-573,107.

■ In reviewing the Commission's order, the standard of review that applies is the "substantial evidence" rule required by Art. 9, Sec. 20, Oklahoma Constitution. We

have interpreted the substantial evidence rule as requiring the reviewing court to look at all the evidence presented, i.e., evidence that detracts from the order as well as supports it. *El Paso Natural Gas Company v. Corporation Commission*, 640 P.2d 1336 (1981). From our examination of the record and the Commission's order we are unable to determine that the Commission gave any consideration to reproduction cost. As we have previously stated, "a finding without evidence to support it is arbitrary and baseless". *C. F. Braun and Company v. Corporation Commission*, 609 P.2d 1268, 1273 (Okl.1980), quoting *Oklahoma Natural Gas Company v. Corporation Commission*, 90 Okl. 84, 216 P. 917 (1923). In *Southwestern Public Service Co. v. State*, Okl., 637 P.2d 92, 100 (1981) we said:

"The mandate of the Constitution, Article IX, § 22 is threefold, i.e. (1) the Commission shall file with the record on appeal and as a part thereof a written statement of the reasons upon which the action appealed from was based; (2) the Commission must make findings of fact, and (3) the Chairman of the Commission shall certify to the Supreme Court all the facts upon which the action appealed from was based, and which may be essential for the prompt decision of the appeal. Upon failure to comply, the Supreme Court may remand the case to the Commission with directions to find the facts upon which the Commission bases its order, and to certify the same to the court, before the appeal is finally decided.

And where there is no finding by the Commission on a necessary point, and the evidence in the record is indefinite and unsatisfactory, on review here, the order will not be sustained."

While the Commission did admit evidence pertaining to reproduction cost, its failure to make any reference to such evidence or the weight afforded it in making its findings and conclusions leaves this Court only to conjecture and speculation as a basis for appellate review. *General Telephone Company of the Southwest v. State*, 484 P.2d 1304 (Okl.1971). We therefore hold that the Commission's order as now constituted is not supported by substantial evidence as required by Art. 9, Sec. 20, Oklahoma Constitution, does not comply with the requirements of Art. 10 § 22 of the Oklahoma Constitution, and must therefore be vacated and the cause remanded to the Commission for proper consideration of reproduction cost in the construction of a fair value rate base.

## II.

Lone Star further contends that the Commission's order fails to grant Lone Star a reasonable return on its investment. The order permitted Lone Star a rate of return on the original cost rate base set by the Commission (which, as discussed in part one of this opinion, did not include a consideration of reproduction cost and, therefore, was not a fair value rate base) of 10.05%. This 10.05% return on original cost rate base results in a 13.25% return on equity. Return on equity is the relationship of the amount of annual earnings available after all expenses (including debt costs, preferred and preference dividends) are paid to the total value of all common shareholders' investment.

A regulated public utility is entitled to a fair opportunity to earn a reasonable rate of return on its investment. *Application of Southwestern Bell Telephone Company*, 575 P.2d 624 (Okl.1978). A public utility is entitled to earn a return on the value of the property which it employs for the convenience of the public and a return to the equity owner sufficient to enable the public utility to operate successfully, maintain its financial integrity, attract capital, and compensate its investors for the risk assumed. *Federal Power Commission v. Hope*, 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1943); *Bluefield Water Works and Improvement Company v. Public Service Commission*, 262 U.S. 679, 43 S.Ct. 675, 67 L.Ed. 1176 (1923); *Cities Service Gas Company v. Federal Power Commission*, 155 F.2d 694 (10th Cir. 1946); *Southwestern Bell Telephone v. State*, 230 P.2d 260 (Okl.1951).

Is there substantial evidence in the record to support the Commission's determination that a 10.05% rate of return based on a 13.25% return on equity are fair and reasonable? The Commission's staff presented no evidence of what either a reasonable rate of return or a reasonable return of equity would be. The staff simply presented the Commission a range of options on the return of equity calculation, giving no testimony as to the desirability of one option over the other. From that range of options, and without any supporting evidence or reasoning the Commission selected a 10.05% rate of return based on 13.25% return on equity.

■ Lone Star, on the other hand, presented evidence that the minimum reasonable return on equity was 16% and the minimum rate of return that would be adequate was 11.10%. Their evidence disclosed that investor expectation in regard to return is higher. Lone Star also presented evidence that achieved returns on equity by natural gas companies similar to Lone Star averaged 15.8% in 1978. This evidence is indicative of a permitted return on similar risks. *Bluefield Water Works and Improvement Company v. Public Service Commission*, supra. This method used by Lone Star to determine an adequate rate of return on its investment is called the cost of capital measure of return and is accepted as a reliable measure of what a fair return on investment is. 64 Am.Jur.2d, "Public Utilities," § 193. Since Lone Star's figures are supported by the evidence and testimony of its experts and the Commission's figures are not based on any supporting evidence or reasoning, we hold that the Commission's order determining the rate of return and return on equity is not supported by substantial evidence and must therefore be reversed for a finding as to a just and reasonable rate of return which is supported by the record and explained in its adjudication. *St. Louis-San Francisco Ry. Company v. State*, 478 P.2d 354 (Okl.1970); *West Penn Power Company v. Pennsylvania Public Utility Commission*, 50 Pa.Cmwlth. 164, 412 A.2d 903 (1980).

### III.

■ Lone Star contends that the Commission erred in not giving substantial consideration to the factors of attrition, erosion and regulatory lag in determining the proper rate of return to Lone Star. Under the rate base method of setting rates, the Commission is to determine Lone Star's expected expenses in the conduct of its business. *Tecumseh Gas System Incorporated v. State*, 537 P.2d 421, 422 (Okl.1975); *Application of Oklahoma Natural Gas Company*, 406 P.2d 273, 277 (Okl.1965). Lone Star presented evidence that further attrition, erosion and regulatory lag effecting Lone Star's rate of return could reasonably be expected. The testimony reflected that in order for Lone Star to realize the 15% to 16% return on equity, it would have to be granted a higher return because of erosion of earnings by regulatory lag. As the utility goes through the rate making process, its return will continue to drop as long as its operating expenses continue to increase above the operating expenses reflected in the test year. Many factors act to prevent a granted return from ever being realized. Some of the factors being testified to were: regulatory lag; increase in capital costs; increased original cost investment while sales requirements for existing customers decline; increased operation and maintenance costs per customer due to effects of inflation; additional responsibilities imposed by the National Energy Act; payroll taxes paid by the utility; higher depreciation expenses; and higher ad valorem taxes.

■ The Commission presented no contrary evidence and admitted that no adjustment was made for inflation, attrition, erosion or regulatory lag. Instead the Commission's staff stated that the effects of inflation were built into the test year. The effects of past inflation, although built into the test year, will only balance out so long as revenues and expenses are rising in the same proportion. This balancing cannot reasonably be expected to occur when inflation continues after the test year. See

*South Central Bell Telephone Company v. Louisiana Public Service Commission*, 352 So.2d 964, 975–76 (La.1977), cert. denied 437 U.S. 911, 98 S.Ct. 3103, 57 L.Ed.2d 1142. The testimony of Lone Star reflects that the increase in operating expenses and costs was exceeding the increase of operating revenues.

Other jurisdictions require regulatory commissions to give substantial consideration to attrition, erosion and regulatory lag. *New England Telephone and Tel. Co. v. State*, 113 N.H. 92, 302 A.2d 814 (1973); *Potomac Electric Power Company v. Public Service Commission*, 380 A.2d 126 (D.C.App. 1977); *Boston Gas Company v. Department of Public Utilities*, 359 Mass. 292, 269 N.E.2d 258 (1971); *South Central Bell Telephone Company v. Public Utilities Commission*, Tenn.App., 579 S.W.2d 429 (1970). As the New Hampshire Supreme Court stated in *New England Telephone and Tel. Co. v. State*, supra:

> "If the existence of attrition can be established by the company, the commission should evaluate the impact of this factor on the earnings of the utility and make an appropriate allowance." 302 A.2d 818.

An attrition adjustment would seem to be especially important when the Commission in this case used an original cost rate base in a period of inflation. We therefore hold that the Commission's failure to consider the effects of attrition, erosion and regulatory lag (especially when coupled with its use of an exclusively original cost rate base and taking into consideration the indisputable fact of inflation and the uncontroverted evidence) is an additional reason requiring reversal of the Commission's order and we remand this aspect of the case to the Commission for further consideration and action.

## IV.

Lastly, Lone Star asserts that the Commission erred in not including a portion of the rate case expenses in the test year operating expenses. In *Carey v. Corporation Commission*, 168 Okl. 487, 33 P.2d 788 (1934), we recognized that it would be proper for a public utility company to be allowed rate case expense when "the public service company has reasonably and fairly employed necessary outside help in connection with . . . (the) case." Id. at 794. Lone Star contends that outside counsel was essential to the preparation of the rate case in that such counsel reviewed the prepared testimony exhibits from the viewpoint of the Oklahoma Public Utility Law, and participated in the preparation and conduct of Lone Star's case for the Commission. Lone Star presented evidence that the rate case expense was $24,649.

The Commission staff made no recommendation or adjustment for rate case expense. The Commission in its order, followed the staff's omission and made no determination as to the rate case expenses. We therefore hold that on remand of the subject Order No. 157978 that the Commission consider the question of rate case expenses and determine whether such rate case expenses are appropriate.

## V.

For the above stated reasons we reverse the Commission's Order No. 157978 and remand for further consideration in conformity with this opinion.

REVERSED.

IRWIN, C. J., and LAVENDER, DOOLIN, HARGRAVE and OPALA, JJ., concur.

HODGES, SIMMS and WILSON, JJ., dissent.

HODGES, Justice, dissenting:

I must respectfully dissent for three reasons: 1) The Corporation Commission is not required to adopt reproductive cost in determining a rate base for a public utility;[1] 2) the burden is on the utility, not the

1. See *Federal Power Com'n. v. Hope Natural Gas Co.*, 320 U.S. 591, 605, 64 S.Ct. 281, 289, 88 L.Ed. 333, 346 (1944).

Corporation Commission, to prove the need for consideration of reproduction cost; and 3) the determination of an adequate rate of return should be left to the Commission unless the rate is confiscatory.

## I and II

Reproduction cost is merely one of the elements which the Commission should consider, and is not conclusive in establishing a rate base.[2] There is no constitutional requirement "that the owner who embarks on a wasting-asset business of limited life shall receive at the end more than he has put into it."[3] The opinion of the majority is inconsistent with *Tecumseh Gas System v. State*, 565 P.2d 356 (Okl.1977), in which this Court recognized, with approval, the Commission's decision in that case not to take reproduction cost into consideration. Tecumseh argued that it was entitled to earnings on the reproduction cost new of the plant, less current accrued depreciation based on the original cost of the plant, and that the Commission had failed to give substantial consideration to reproduction costs. The Commission refused to accept the argument because: 1) Tecumseh did not intend to reproduce or replace the plant, 2) this theory totally ignored the present age and condition of the plant, and 3) under current conditions, no utility would construct a completely new plant system exactly like the existing plant. The Commission noted that Tecumseh's figures of reproduction cost new were not based on actual observed appraisals of the plant value, age, condition or obsolescence, while the Commission considered technological and maintenance obsolescence.

This case is similar to *Tecumseh*. There is no evidence that Lone Star intends to reproduce the plant, or that it would construct a new system like the existing plant; nor did Lone Star introduce any actual observed appraisals of plant value, present age and obsolescence. The adoption of the valuation urged by Lone Star would result in an increase of the rate base without updating the system which serves the ratepayers, and based on *Tecumseh* the Commission could not adopt the valuation without further evidence.

In determining a gas rate base, the Corporation Commission is not limited to any particular theory or method, but it should consider all proper elements pertinent to a particular case.[4] The burden of proof rests on Lone Star, not the Corporation Commission. The burden of proof is the duty to produce evidence as the case progresses; to establish the validity of the claim by substantial evidence; and though the duty to produce evidence may pass from party to party, the burden of proving the rate base is on the party seeking to have reproduction costs considered in a proceeding to increase the rate base.[5]

## III

A rate of return which is not confiscatory should not be disturbed on appeal. This Court has no power to legislatively review ratemaking or to establish new rates in appellate proceedings.[6] In determining the rate of return, the Commission acts in its legislative capacity and exercises exclusive original jurisdiction over ratemaking.[7] This Court is concerned in the area of rate of return only if the rate is alleged to be confiscatory, and a utility who contends that a rate order results in confiscation has

2. *Lone Star Gas Co. v. Corporation Com'n.*, 170 Okl. 292, 39 P.2d 547, 556 (1935).

3. *Federal Power Com'n. v. Natural Gas Pipeline Co. of America*, 315 U.S. 575, 593, 62 S.Ct. 736, 746, 86 L.Ed. 1037, 1053 (1942).

4. *Carey v. Corporation Com'n.*, 168 Okl. 487, 33 P.2d 788 (1934).

5. See *Lone Star Gas Co. v. Corporation Commission*, 170 Okl. 292, 39 P.2d 547, 553 (1935) for burden of proof in gas rate proceedings; See *Standard Marine Ins. Co. v. Traders' Compress Co.*, 46 Okl. 356, 148 P. 1019, 1021 (1915) for generalized discussion of burden of proof.

6. *Wiley v. Oklahoma Natural Gas Co.*, 429 P.2d 957 (Okl.1967).

7. Okl.Const. art. 9 §§ 18, 24.

the burden of proving confiscation with clarity and definiteness.[8]

Lone Star has not shown that the rate is confiscatory. Confiscatory rates are those which do not afford a fair and reasonable return on the property on the investment at the time it is used in public service. A return is fair and reasonable if it: covers utility operating expenses; debt service and dividends; compensates investors for the risks of investment and is sufficient to attract capital; assures confidence in the enterprise's financial integrity; and also provides protection to the existing and foreseeable relevant public interests.[9]

It is not enough for Lone Star to allege confiscation in the hope that this Court will disagree with the complex decision of the Commission and substitute it with another more to its liking. There is a strong presumption in favor of the validity of conclusions reached by an experienced administrative body after a full hearing.[10] This Court should not interfere with the exercise of ratemaking power unless confiscation is clearly established by the record before us. The established principle which should guide this Court is that the party seeking the rate increase carries the burden of proof that confiscation will occur, and that the Court will not interfere with the exercise of ratemaking power unless confiscation is clearly established. I am not persuaded that Lone Star will suffer confiscation based on a 10.5% rate of return. If the total effect of the rate order is not unjust or unreasonable, judicial inquiry must cease.[11] This Court may not substitute its own judgment for that of the Commission in an area of expertise which the Commission supervises.

I am authorized to state that Justice Simms and Justice Wilson concur in the views herein expressed, and join with me in this dissenting opinion.

**8.** *Lindheimer v. Ill. Bell Tel. Co.*, 292 U.S. 151, 169, 54 S.Ct. 658, 665, 78 L.Ed. 1182, 1194 (1934); *Southwestern Public Service Co. v. State*, 637 P.2d 92, 97 (Okl.1981); *Southwestern Bell Tel. Co. v. State*, 181 Okl. 246, 71 P.2d 747, 758 (1937).

**9.** *Permian Basin Area Rate Cases*, 390 U.S. 747, 792, 88 S.Ct. 1344, 1373, 20 L.Ed.2d 312 (1968); *Boston Edison Co. v. Dept. of Public Utilities*, 375 Mass. 1, 375 N.E.2d 305, 314 (1978); *State*

*v. Tri-State Telephone & Telegraph Co.*, 204 Minn. 516, 284 N.W. 294, 305 (1939).

**10.** *Darnell v. Edwards*, 244 U.S. 564, 569, 37 S.Ct. 701, 61 L.Ed. 1317 (1917); See *Tulsa Area Hospital Council v. Oral Roberts*, 626 P.2d 316, 320 (Okl.1981).

**11.** *Southwestern Public Service Co. v. State*, note 8, supra.