## OKLAHOMA COTTON GINNERS' ASS'N v. WALKER et al.

No. 25018.    June 19, 1934.

Rainey, Flynn, Green & Anderson, Alger Melton, and C. E. Dudley, for plaintiff in error.

A. Holmes Baldridge, for defendants in error.

ANDREWS, J. This is an appeal by the Oklahoma Cotton Ginners' Association from an order of the Corporation Commission fixing rates to be charged by all persons, corporations, or concerns engaged in the gin-

ning of seed cotton as a public business and operating cotton gins within the state of Oklahoma for the ginning season 1933-1934, and effective after September 5, 1933.

The rates prescribed by the order of the Corporation Commission are 20c per 100 pounds for picked cotton and 22½c per 100 pounds for snapped or bollie cotton.

The order further provided that the charges for supplying bagging and ties for that ginning season should be 90c per pattern for sugar bagging, 1¾ pound weight, and $1 per pattern for jute bagging, grade "A," 2 pound weight.

The several assignments of error complained of are summarized and presented as follows:

"That the said order of the Corporation Commission is not supported by the evidence, is contrary thereto, is contrary to the law and the evidence; that the rates prescribed in said order are arbitrary, unjust and unreasonable and deprive the owners and operators of said gins of their property without due process of law in violation of article II, section 7, of the Constitution of the state of Oklahoma and of the Fourteenth Amendment to the Constitution of the United States."

The cause was heard and determined principally upon the evidence of witness M. B. Louthan and the data presented by him. Mr. Louthan is the accountant for the Corporation Commission. The data from which his report was based, shown in exhibit "2", were obtained from reports and figures which were required to be supplied to the Commission by the gin owners for the season of 1932-1933. (The only change appearing in exhibit "2" was the item of adjustment.) For the purposes of this case, counsel for the plaintiff have agreed and accepted the data as true and correct and the proper data to be considered in determining the validity of the order appealed from.

In its brief the Corporation Commission says that one of the most perplexing problems in the establishing of gin rates is the determination of the proper basis to be used in establishing a rate. The rate fixed was for the state as a unit. In its brief it says:

"* * * Under a rate of 25c per 100 lbs. for picked cotton on the east side of the state, the gins in Latimer county, as shown on pg. 70 of case-made (pg. 41 of Ex. 2), would scarcely more than make operating expenses, whereas the gins located in Muskogee county, another county on the east side, would earn in some instances as high

as 23 per cent. on the investment, on a 25c rate, as shown on page 81 of case-made (pg. 53 of Ex. 2). Assuming a rate of 20c per 100 lbs. for the west side, the gins in Kiowa county would earn an enormous return on the investment, whereas the gins in Alfalfa county would make approximately operating expenses. Under a 25c rate for snapped cotton, and 30c for bollie cotton, the gins in Kiowa county made an average earning of 31.9 per cent. for the ginning season 1932-1933, as shown on page 48 of case-made (pg. 19 of Ex. 2); whereas the gins in Alfalfa county, under the same rate, did not make operating expenses, as shown on page 31 of case-made (pg. 2 of Ex. 2). Thus, even though the state be zoned, inequalities would occur within the zones in the same way they occur where the entire state is used as the unit.

"From the above discussion, it is obvious that however imperfect the use of the entire state, as a unit, for the purpose of establishing a cotton gin rate, may be, it nevertheless, in view of the difficulties discussed above, affords the most satisfactory basis to be used for the purpose of setting a gin rate.

"With a total of 771 gins actually ginning cotton within the state, as shown on page 30, case-made (pg. 1 of Ex. 2), it is obvious that the use of the entire state as a unit, for the purpose of setting ginning rates, will result in certain inequalities respecting particular gins. Some gins will earn too much on their investment, while others will not earn enough. But, on the whole, the use of the entire state as a unit will more nearly approximate justice than the use of the zone system."

However that may be as to the Corporation Commission, the rate is not satisfactory to a gin which is required to operate without a reasonable return on its investment. The return estimated on the rate fixed is stated in the brief of the Corporation Commission to be 4.28 per cent. With reference thereto it says:

"The earnings of 4.28 per cent. is somewhat illusive. It represents the earning for all the gins in the state, regardless of location, regardless of number of bales, which actively operated during the ginning season 1932-1933. Were the gins on the west side of the state only considered, the net earning would be approximately 10 per cent. Were the valuations placed on gins located in districts where only a few hundred bales of cotton are ginned each season, eliminated from the total valuation of $14,142,266.43, the net return on the investment would be far in excess of 4.28 per cent.

"In order to prevent the gins advantageously located from earning a return greatly in excess of a reasonable return, it is

necessary to set a rate that may, in the case of some of the unfortunately located gins, result in a slightly low rate of return. This presents a difficult problem, and the Commission handles it in the best way it is able. As a reading of Order No. 6465 (pg. 179 C.-M.) will show, there are ten counties within the state where the net return of all the gins was in excess of 30 per cent. for the ginning season 1932-1933. These counties were: Custer, Greer, Jackson, Jefferson, Kingfisher, Kiowa, Stephens, Tillman, Washita, and Wagoner. (See detail Ex. No. 2, case-made.) Two gins in Kiowa county showed net earnings of 122 and 132 per cent., respectively, for the ginning season 1932-1933. The above is given as illustrative of the necessity of setting a ginning rate which will permit a proper earning on gins doing an average volume of business within the state, although it may, in some instances, result in a slightly low rate of return on gins not averagely situated.

"To further illustrate the statement that the present rate set by the Commission, appealed from herein, affords a rate of return on the investment greatly in excess of a reasonable rate of return, on gins properly located, it would be helpful to show the earning of gins, under the new rates, located on the west side of the state. Here gins operate more nearly to physical capacity than do gins located in other parts of the state."

We do not think it necessary to enter into any extended discussion of the subject. The rates fixed operate to deprive a gin owner of valuable rights, and without regard to the problem confronting the Corporation Commission in fixing rates and without regard to the fact that it has not been furnished with sufficient assistance to properly compute rates, the rates as fixed cannot stand.

For the reasons stated, the prayer of the plaintiff in error is sustained, the rates fixed are vacated and set aside, and the cause is remanded to the Corporation Commission, with directions to enter a new order fixing rates that will be reasonable and just in the premises, without regard to the difficulties encountered in so doing.

CULLISON, V. C. J., and SWINDALL, McNEILL, and WELCH, JJ., concur. RILEY, C. J., dissents. OSBORN, J., concurs specially. BAYLESS AND BUSBY, JJ., absent.