## OKLAHOMA COTTON GINNERS' ASS'N et al. v. STATE et al.

No. 26638. Oct. 17, 1935.

Rehearing Denied Nov. 19, 1935.

Rainey, Flynn, Green & Anderson and C. E. Dud'ey, for plaintiffs in error.

J. B. A. Robertson, Arthur Holloway, and Holmes Baldridge, for defendants in error.

OSBORN, V. C. J. This is an appeal from an order of the Corporation Commission fixing the rate for ginning cotton within the state for the year 1935-36. The appellants are the Oklahoma Cotton Ginners Ass'n and numerous owners and operators of cotton gins. The rate fixed by the Corporation Commission for said year is:

25c per 100 pounds for picked cotton;
27½c per 100 pounds for snapped or bollie cotton; and

$1 per pattern for bagging and ties.

In determining the rate for ginning cotton, which is fixed annually by the Commission prior to the beginning of the ginning season, the Commission relies upon certain data furnished annually by the owners and operators of cotton gins showing the book value of each gin, the number of bales ginned gross operating revenue, net operating expenses, and the net operating revenue. Upon the data so furnished by the owner and operator of each gin the percentage of profit or loss may be computed by the Commission. This data is computed by the Commission and is used as one of the important factors in fixing the annual rate.

Pursuant to notice given on July 30, 1935, a hearing was held by the Commission, at which time there appeared various gin owners and operators and other persons who appeared in behalf of the farmers. An opportunity was given for the presentation of evidence by those present and a number of witnesses testified as to general crop conditions and economic conditions existing over the state. M. B. Louthan, auditor and accountant for the Commission, testified from an exhibit which had been prepared for the purpose of computing said rate, showing the book value, bales ginned, cost per bale profit on bagging and ties, gross operating revenue, net operating expenses, net operating revenue and percentage of loss or profit on the investment of each and every gin operating within the state of Oklahoma for six prior seasons.

At the conclusion of the hearing the Commission entered its findings of fact, and among other things it was found that the year 1934-35 was an abnormal year; that the number of bales ginned during said season, to wit, 287,363, represented the lowest number of bales ginned since the Commission was vested with jurisdiction over cotton gins operated as public utilities; that under the rate prevailing for said season, which was 30c per 100 pounds for seed (picked) cotton, and 35c per 100 pounds for snapped or bollie cotton, the gins on the west side of the state sustained a loss of 1.8 per cent. on the investment; that the gins on the east side of the state earned a profit of 2.5 per cent. on

the investment; that for the entire state there was a loss of .1 per cent. and by reason of the abnormality of conditions the year of 1934-35 should be excluded in considering what would be a fair rate to be fixed for the year 1935-36. In addition thereto, the Commission found:

"That an attempt to base ginning rates for current ginning season upon the earnings of the ginning season 1934-35 would obviously be erroneous, because of the tremendous crop failure of the 1934-35 season; that a fair method of determining the ginning rate for the current season requires the rate to be based upon average conditions during a 5-year period which does not include the ginning season 1934-35; that the average experience during the 5-year period 1929-34 represents a fair basis upon which to base rates for the current ginning season; that the average number of gins operating within the state during the 5 seasons 1929-34 was 816; that the average annual value of the 816 gins operating during the 5-year period 1929-34, was $15,588,936.22; that the average annual number of bales ginned during the 5-year period 1929-1934 was 982,082 bales; that the average cost per bale of ginning, during the period 1929-1934, was $3.83; that the average annual gross operating revenues, during the 5-year period 1929-1934, including the profit on bagging and ties. amounted to $5,337,121.84; that the average annual net operating expenses, adjusted, for the 5 seasons 1929-1934, amounted to $3,768,773.24; that the average annual net operating revenues, for the 5 seasons 1929-1934, amounted to $1,568,348.60; that the average annual net earnings on the gin investment, for the 5 seasons 1929-1934, amounted to 10.6 per cent.; that the average annual rate for the 5 seasons 1929-1934 was 26c per 100 pounds for picked cotton, and 32.3c per 100 pounds for snapped or bollie cotton; that the operating expenses have, on an average, decreased approximately $1.20 per bale from the average cost per bale prevailing during the season 1929-1930 and the season 1930-1931; that the application of a rate of 25c per 100 pounds for picked cotton and 30c per 100 pounds for snapped or bollie cotton, together with a reduction of $1.20 per bale from the cost per bale of ginning obtaining during the season 1929-1930, applied to the 5-year average of 1929-1934, would result in a net earning on the average gin investment of 11.5 per cent.; that the government forecast, as of August 8. 1935 for cotton production within the state of Oklahoma for the current season 1935-1936. was 837,000 bales; that this estimate of 837,000 bales may be slightly decreased, due to some drouth conditions obtaining in Southwestern Oklahoma, and insect infestation in Eastern Oklahoma; that a rate of 25c per 100 pounds for picked cotton and 27½c per 100 pounds for snapped or bollie

cotton is a fair, just and reasonable rate to be charged by ginners for ginning of cotton during the current season 1935-36; that a charge of $1 per pattern for bagging and ties is a fair, just, and reasonable charge for the same for the ginning season 1935-1936. * * *"

It is urged by the Corporation Commission that a joint appeal from the order of the Commission cannot be prosecuted by the individual ginners or by the voluntary organization known as the Oklahoma Cotton Ginners Association. In view of our determination hereof, and of the uncertainty heretofore existing as to the nature of the appeal in such cases, and of the failure to notice the question in the case of Oklahoma Cotton Ginners Ass'n v. Walker et al., 168 Okla. 459 33 P. (2d) 766, we shall not determine that question herein, but will go to the merits of the controversy as presented by the record.

At the threshold of this case, we are confronted with the question as to the nature of the hearing in this court, whether legislative or judicial, on appeal from an order of the Corporation Commission affecting the rates and charges of ginners classified by law as public service corporations. In the determination of this question, which has perplexed the courts of this state, and the federal courts, since the erection of the state, it is necessary to advert to the delegation of power to the Corporation Commission by the Constitution.

By the provisions of article 9 of the Constitution, a Corporation Commission was established, and by sections 18 to 34, inclusive, of article 9, certain duties were placed upon said Commission and upon this court in connection with a review of the action of said Commission. Section 18 provides in part:

"The Commission shall have the power and authority and be charged with the duty of supervising, regulating, and controlling all transportation and transmission companies doing business in this state in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses and preventing unjust discrimination and extortion by such companies. * * *

"Before the Commission shall prescribe or fix any rate, charge or classification of traffic, and before it shall make any order, rule, regulation or requirement directed against any one or more companies by name, the company or companies to be affected by such rate, charge, classification, order, rule, regulation or requirement, shall first be given,

by the Commission, at least ten days' notice of the time and place, when and where the contemplated action in the premises will be considered and disposed of, and shall be afforded a reasonable opportunity to introduce evidence and to be heard thereon, to the end that justice may be done, and shall have process to enforce the attendance of witnesses. * * *

"The authority of the Commission (subject to review on appeal as hereinafter provided) to prescribe rates, charges, and classifications of traffic, for **transportation and transmission companies,** shall, subject to regulation by law, be paramount; but its authority to prescribe any other rules, regulations or requirements for corporations or other persons shall be subject to the superior authority of the Legislature to legislate thereon by general laws. * * *"

It is thereby noted that said section primarily deals with regulating and controlling **transportation and transmission companies,** and by reference to section 34. article 9, we find these terms specifically defined:

"* * * The term 'transportation company' shall include any company, corporation, trustee, receiver, or any other person owning, leasing, or operating for hire, a railroad, street railway, canal, steam boat line, and also any freight car company, car association, express company, sleeping car company, car corporation, or company, trustee or person in any way engaged in such business as a common carrier over a route acquired in whole or in part under the right of eminent domain, or under any grant from the government of the United States.

"* * * The term 'transmission company' shall include any company, receiver or other person, owning, leasing or operating for hire any telegraph or telephone line. * * *"

By section 20, article 9, provision is made for appeal from any action of the Commission prescribing rates, charges, or classifications of traffic or affecting the train schedule of any transportation company or requiring any facilities, conveniences, or public services of any **transportation or transmission company** or refusing to approve a suspending bond, and said section further provides:

"* * * **The Legislature may also, by general laws, provide for appeals from any other action of the Commission, by the state, or by any person interested, irrespective of the amount involved.** All appeals from the Commission shall be to the Supreme Court only, and in all appeals to which the state is a party, it shall be represented by the Attorney General or his legally appointed representative. No court of this state (except the Supreme Court, by way of appeals as herein authorized) shall have jurisdiction to review, reverse, correct, or annul any action of the Commission within the scope of its authority, or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the Commission in the performance of its official duties; Provided, however, that the writs of mandamus and prohibition shall lie from the Supreme Court to the Commission in all cases where such writs, respectively, would lie to any inferior court or officer."

Section 22, article 9, provides:

"In no case of appeal from the Commission, shall any new or additional evidence be introduced in the Supreme Court; but the chairman of the Commission, under the seal of the Commission, shall certify to the Supreme Court all the facts upon which the action appealed from was based and which may be essential for the proper decision of the appeal, together with such of the evidence introduced before, or considered by, the Commission as may be selected, specified, and required to be certified by any party in interest, as well as such other evidence so introduced or considered as the Commission may deem proper to certify. * * * **The Supreme Court shall have jurisdiction, on such appeal, to consider and determine the reasonableness and justness of the action of the Commission appealed from, as well as any other matter arising under such appeal.** * * *"

Section 23 of article 9 provides, in part, as follows:

"Whenever the court, upon appeal, shall reverse an order of the Commission affecting the rates, charges, or the classifications of traffic of any transportation or transmission company, it shall, at the same time substitute therefor such orders as, in its opinion, the Commission should have made at the time of entering the order appealed from; otherwise, the reversal order shall not be valid. Such substituted order shall have the same force and effect (and none other) as if it had been entered by the Commission at the time the original order appealed from was entered. * * *"

Section 24 of article 9 provides, in part:

"The right of any person to institute and prosecute in the ordinary courts of justice, any action, suit, or motion against any transportation or transmission company, for any claim or cause of action against such company, shall not be extinguished or impaired, by reason of any fine or other penalty which the Commission may impose, or be authorized to impose, upon such company because of its breach of any public duty, or because of its failure to comply with any order or requirement of the Commission; **but, in no such proceeding by any person against such corporation, nor in any collateral proceeding shall the reasonableness, justness, or valid-**

ity of any rate, charge, classification of traffic, rule, regulation, or requirement, theretofore prescribed by the Commission, within the scope of its authority, and then in force, be questioned. * * *"

Section 19 of article 9 provides, in part:

"In all matters pertaining to the public visitation, regulation, or control of corporations, and within the jurisdiction of the Commission, it shall have the powers and authority of a court of record, to administer oaths, to compel the attendance of witnesses, and the production of papers, to punish for contempt any person guilty of disrespectful or disorderly conduct in the presence of the Commission while in session, and to enforce compliance with any of its lawful orders or requirements by adjudgment, and by enforcing its own appropriate process against the delinquent or offending party or company (after it shall have been first duly cited, proceeded against by due process of law before the Commission sitting as a court, and afforded opportunity to introduce evidence and to be heard, as well against the validity, justness, or reasonableness of the order or requirement alleged to have been violated, as against the liability of the company for alleged violation), such fines or other penalties as may be prescribed or authorized by this Constitution or by law. **The Commission may be vested with such additional powers, and charged with such other duties (not inconsistent with this Constitution) as may be prescribed by law, in connection with the visitation, regulation, or control of corporations,** or with the prescribing and enforcing of rates and charges to be observed in the conduct of any business where the state has the right to prescribe the rates and charges in connection therewith, or with the assessment of the property of. corporations, or the appraisement of their franchises, for taxation, or with the investigation of the subject of taxation generally."

Section 36 of article 9 provides as follows:

"After the second Monday in January, 1909, the Legislature may, by law, from time to time, alter. amend, revise, or repeal sections from 18 to 34, inclusive, of this article, or any of them, or any amendments thereof: **Provided, that no amendment made under authority of this section shall contravene the provisions of any part of this Constitution other than the said sections last above referred to or any such amendments thereof."**

Section 34, article 9, provides, in part:

"* * * The provisions of this article shall always be so restricted in their application as not to conflict with any of the provisions of the Constitution of the United States, and as if the necessary limitations upon their interpretation had been herein expressed in each case."

It will be noted that the term "public ser-

vice corporation" is defined in section 34 as follows:

"* * * The term 'public service corporation' shall include all transportation and transmission companies, all gas, electric light, heat and power companies, and all persons authorized to exercise the right of eminent domain, or to use or occupy any right of way, street, alley, or public highway, whether along, over, or under the same, in a manner not permitted to the general public. * * *"

The jurisdiction of the Corporation Commission over gins was specifically extended by the provisions of chapter 176 Sess. L. 1915, p. 354 (later amended, and now appearing as sections 3676-3683, O. S. 1931), the title to the 1915 act being:

"An act regulating gins and the ginning of seed cotton."

Section 3676, O. S. 1931, amending prior acts, declares that certain classes of gins are "public utilities, and the operation of same for the purpose of ginning seed cotton is declared to be a public business." Section 3679, O. S. 1931, provides, in part, as follows:

"That the Corporation Commission shall have the same power and authority and be charged with the duty of regulating and controlling such cotton gins in all matters relating to the performance of public duties and the charges therefor and correcting abuses and preventing unjust discrimination and extortion, as is exercised by said Commission as to transportation and transmission companies and shall have the same power to fix rates, rules, charges and regulations to be observed by such person or persons or corporation operating gins and the affording of all reasonable conveniences, facilities and services as it may impose as to transportation or transmission companies. * * *"

Section 3681, O. S. 1931, provides:

"The orders made by said Commission fixing rates, charges, rules and regulations as to any person, persons, or corporation operating any gin or gins may be reviewed, on appeal by the Supreme Court in the same manner, form, jurisdiction and procedure as apply to such orders made relative to transportation and transmission companies."

Section 3682, O. S. 1931, provides:

"That in all matters pertaining to the regulation and control of gins and ginning and the business of such, the Commission shall have the same power and authority as is now exercised by it under the law as to any matter pertaining to the public visitation, regulation or control of transportation and

transmission companies, and may enforce its orders against any person, firm, company or corporation maintaining or operating a gin or gins, by imposing a fine against them, or either of them, not exceeding $100 for 'the violation of any of its orders."

From the above-quoted constitutional provisions it will be seen that the authority of the Corporation Commission, as provided by the Constitution, related primarily to transportation and transmission companies, and the duties of this court on appeal from orders of the Corporation Commission relating to rates, services, and classifications of traffic were by the Constitution construed to be legislative. Pioneer T. & T. Co. v. State, 40 Okla. 417, 138 P. 1033. The provisions relating to appeal have been declared to relate only to transportation and transmission companies and not to public service corporations generally unless provided for by statute. Shawnee Gas & Elec. Co. v. State, 31 Okla. 505, 122 P. 222.

It is contended herein that chapter 176, supra, was in effect an amendment of the Constitution under authority of section 35, article 9, supra, and that by sections 3681 and 3682, supra, an appeal was provided to this court from orders of the Corporation Commission affecting rates and charges of ginners in the same manner as provided by the Constitution as to transportation and transmission companies, and that, therefore, the appeal in certain matters as to transportation and transmission companies being legislative, the appeal provided as to rates and charges of gins is likewise legislative, and not judicial.

But with this contention we cannot agree. In the first p'ace if chapter 176, supra, is amendatory of sections 18 to 34 of article 9 of the Constitution, it is so only by implication, and amendments of the Constitution by implication are not favored. Adams v. City of Hobart, 166 Okla. 267, 27 P. (2d) 595; Hopkins v. Anderson (Cal. App.) 12 P. (2d) 1043; City of Klamath Falls v. Oregon Liquor Control Comm. (Ore.) 29 P. (2d) 564; Cooley, Constitutional Limitations, vol. 1 (7th Ed.) page 217. It would seem that the Legislature, if it intended to amend the fundamental instrument on which the government of this state was erected, would have expressed itself in no uncertain terms as to the character of its action.

Moreover, we call attention to the provisions of section 57, article 5, of the Constitution, to the effect that every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, with certain exceptions, and "no law shall be revived, amended or the provisions thereof extended or conferred by reference to its title only; but so much thereof as is revived, amended, extended or conferred shall be re enacted and published at length. * * *" By reference to the title to chapter 176, supra, it will be noted that the provisions of said section 57 were wholly ignored, and the oft-defined purpose of said section of the Constitution—the informing of the members of the Legislature as to the nature of the bill about to be enacted—would be wholly defeated and dispensed with.

In addition, it is to be noted that the power of amendment contained in section 35 of article 9 has a definite and distinct limitation contained therein, to wit: "that no amendment made under authority of this section shall contravene the provisions of any part of this Constitution other than the said sections last above referred to or any such amendments thereof." By section 1 of article 4 of the Constitution it is provided that the powers of the government of the state of Oklahoma shall be divided into three separate departments legis'ative, executive, and judicial, and "except as provided in this Constitution, the legis'ative, executive, and judicial departments of government shall be separate and distinct and neither shall exercise the powers properly belonging to either of the others." The delegation of legislative powers to this court, other than as contained in the Constitution as originally adopted, would violate this provision of the Constitution, and with the restriction contained in section 35, supra, the construction contended for would necessarily fall, unless there is embraced within sections 18 to 34, inclusive, specific authority for such delegation. Sterling Refining Co. v. Walker, 165 Okla. 45, 25 P. (2d) 312; In re Assessment of K. C. So. Ry. Co., 168 Okla. 495, 33 P. (2d) 772; State ex rel. King v. H. F. Wilcox Oil & Gas Co., 162 Ok'a. 237, 19 P. (2d) 572; Keller v. Potomac Elec. Power Co., 261 U. S. 428, 67 L. Ed. 731; Federal Radio Commission v. General Elec. Co., 281 U. S. 464, 74 L. Ed. 969; Federal Radio Comm. v. Nelson Bros. Bond & Mortgage Co., 289 U. S. 266, 77 L. Ed. 1166.

It is said however, that such specific authority is contained in section 20, art. 9, Const., wherein it is provided: "The Legislature may also, by general laws provide for appeals from any other action of the Commission, by the state, or by any person interested, irrespective of the amount involved." It is to be noted, however, that the section of the Constitution which gives to the court legislative

power, on review, of an order affecting rates, charges, or the classification of traffic refers in specific terms to **transportation and transmission companies,** but does not refer specifically to its contemplated duties as to other public service corporations as to which a wide legislative authority was specifically granted to the Corporation Commission as to visitation, regulation, and control. We shall be required to extend, by interpretation, a specific provision definitely applying to transportation and transmission companies to other public service corporations in order to find such delegated authority. And with the provisions of section 1 of article 4 in mind, it would seem that great caution should be exercised by the courts in extending a provision in conflict therewith except upon the most compelling logic.

The division of the government into three distinct departments, neither exercising the functions of either of the other departments, is one of the fundamental concepts of our form of government, and constitutes one of the foundation stones upon which the freedom, liberty, and rights of the citizens in the final analysis rest. The merging of these functions of sovereign power into the hands of one individual, or a group, has strewn the shore-line of history with the wreckage of many governments. It has been with much trepidation and thoughtful consideration that the people have inserted, in the adoption of their various Constitutions, or the amendments thereof, any provision which permitted the intermingling of any of these powers in a board or commission or tribunal. It was with thoughtful consideration, therefore, that the framers of our Constitution set up the Corporation Commission and invested it, subject to many restrictions and conditions, with legislative, executive, quasi-judicial, and administrative powers. The growth of commerce, the intricacies of public and social needs, inspired its creation.

The Supreme Court of Appeals of Virginia, in the case of Aetna Ins. Co. v. Commonwealth (Va.) 169 S. E. 859, in construing a provision of the Constitution of Virginia identical with section 23 of article 9 of our Constitution, said:

"But the appellants insist that this right of appeal is not sufficient to satisfy the consitutional requirements of due process of law because the Commission, in fixing the rates, acted in a legislative capacity, and, under the powers conferred on this court by the state Constitution and statutes, the proceedings on appeal here are likewise legislative in character, and do not furnish an opportunity for a judicial determination of the question whether the rates fixed are confiscatory. Prentis v. Atlantic Coast Line Co., 211 U. S. 210, 29 S. Ct. 67, 53 L. Ed. 150, is relied upon in support of this position. That case involved an order of the Commission fixing railroad rates. Under section 156 (g) of the state Constitution, in the event of a reversal of an order of the Commission establishing rates for transportation companies, this court may substitute therefor such order as the Commission should have made with respect to the fixing of the rate. * * *

"The Supreme Court of Appeals was created by the Constitution of Virginia and invested with the judicial powers of review inherent in an appellate court. No act of the Legislature can divest it of these powers by conferring additional legislative powers upon it, and any statute which would have any such effect would be obviously in contravention of the state Constitution.

"It may be conceded that section 156 (g) of the Constitution does confer upon this court the rate-fixing power with respect to transportation and transmission companies, because thereby this court is required in the event of reversal of the Commission, to substitute its judgment in such matters in the place of the judgment of the Commission. Whether the effect of this is to supersede all judicial powers to determine whether such a rate, deemed proper by this court, is confiscatory, we need not now decide. because this proceeding does not involve the rate of a transportation or transmission company.

"But the appellants contend that section 156 (f) of the state Constitution confers on this court legislative powers in all cases of appeal from the State Corporation Commission involving legislative action by the Commission. If their argument is sound, then this court does not possess in any case any power of judicial review of any legislative action of the State Corporation Commission. Section 156 (f), so far as here pertinent, provides that no new evidence may be introduced in the appellate court, but all evidence taken before the Commission, essential for a proper decision here, shall be certified to this court. It provides further: 'The appellate court shall have jurisdiction, on such appeal, to consider and determine the reasonableness and justness of the action of the Commission appealed from as well as any other matter arising under such appeal; providing, however, that the action of the Commission appealed from shall be regarded as prima facie just, reasonable and correct.' It is further provided that any case may be remanded to the Commission when the public interest requires.

"The appellants contend that the powers of legislative review and judicial review are so inconsistent as to be mutually exclusive, and that section 156 (f) should be construed as conferring the former power

and denying the latter. But the primary and inherent function of this court is that of judicial review, and to construe any constitutional provision as converting this into a legislative tribunal and abolishing its judicial functions when reviewing the Commission's legislative actions would be justified by only the clearest and most compelling language. Considering that the constitutional convention employed such language in section 156 (g), conferring legislative powers as to rates of transportation and transmission companies, and omitted to include such power to substitute our judgment for that of the Commission in section 156 (f) as to other appeals, it is highly persuasive that no such powers were intended to be conferred by section 156 (f). Constitutional language, conferring powers on an appellate court, should be construed as intended to include only those powers consistent with the discharge of the inherent judicial functions of the court. It would require clear and strong language to justify such a construction as would divest the court of its primary duty, that of judicial review. And particularly would this be true if appellants' contention be correct, that our Constitution and statutes provide no other opportunity for judicial review of the Commission's legislative actions unless it be the appeal to this court.

"But whether the powers of legislative and judicial review be mutually exclusive of exercise at the same time by one tribunal (and we do not here decide this question), we are of opinion that the provisions of section 156 (f) were intended to relate solely to those duties and powers normally incident to the discharge of the court's judicial functions, and that the language of the section does not justify an interpretation which would extend their scope to embrace legislative powers. * * *

"Our conclusion therefore is that, in reviewing the action of the Commission in framing the insurance rates here involved, this court will not disturb the action of the Commission unless it appears that the Commission has exceeded its constitutional or statutory power; or that its action has resulted from an unreasonable exercise of its authority; or that it is based upon a mistake of law; or is contrary to the evidence or without evidence to support it; or, finally, that the rate fixed is so low as to amount to confiscation and deprive the regulatees of their property without due process of law."

See, also, Ross'yn Gas Co. v. Fletcher, 5 Fed. Supp. 26.

Instead of chapter 176, supra, constituting an amendment to the Constitution, we think said statute was passed pursuant to authority vested in the Legislature to extend the jurisdiction of the Corporation Commission

by statutory enactment as expressed in section 19 of article 9 Const., as follows:

"* * * The Commission may be vested with such additional powers, and charged with such other duties (not inconsistent with this Constitution) as may be prescribed by law, in connection with the visitation, regulation, or control of corporations, or with the prescribing and enforcing of rates and charges to be observed in the conduct of any business where the state had the right to prescribe the rates and charges in connection therewith, or with the assessment of the property of corporations, or the apprasement of their franchises, for taxation, or with the investigation of the subject of taxation generally. * * *"

In Southern Oil Co. v. Yale Natural Gas Co., 89 Okla. 121, 214 P. 131, it is said:

"By section 18, art. 9, of the Constitution, the Corporation Commission was granted the power and authority and charged with the duty of supervising, regulating, and controlling all transportation and transmission companies doing business in the state, and by section 19, art. 9, of the Constitution, it was provided that the Corporation Commission might be vested with such additional powers and charged with such other duty as might be prescribed by law in connection with the visitation, regulation, and control of corporations, or with prescribing or enforcing rates and charges to be observed in the conduct of all business where the state has the right to prescribe the rates and charges in connection therewith. Under the constitutional authority thus conferred, the Legislature, by chapter 93, Session Laws 1913, extended the jurisdiction of the Corporation Commission so as to include public utilities other than transportation and transmission companies. By this act the Corporation Commission was vested with the power to fix and establish the rates to be charged by public utilities for the commodity furnished by them, and the defendant falls squarely within the term 'public utility' as defined by said act. So that by these constitutional and statutory provisions the power to fix the rates to be charged by the defendant was reserved to the state, acting by and through the Corporation Commission, and by section 7, art. 18, of the Constitution, this power could not be surrendered. * * *"

In Guthrie Gas Light, Fuel & Imp. Co. v. Board of Education, 64 Okla. 157, 166 P. 128, it is said:

"* * * The power to fix rates generally includes the power to make all rates which are not against public policy, or deprive the utility of a just return upon its investment. The Legislature has not seen fit to exercise this power, but has by virtue of section 19, art. 9, Williams' Ann. Const., delegated that power to the Corporation Commission by

chapter 93, Laws 1913, which act extends the jurisdiction of the Commission over all public utilities with power to fix and establish rates and to prescribe rules, requirements. and regulations affecting their services and operation and the management and conduct of their business; and under the powers thus conferred the Commission was vested with authority to make the order if it was otherwise valid; as the power thus delegated is only limited by the terms of the act making the grant, and therein is contained no limitation upon the powers conferred. * * *"

We are not unmindful of the fact that various decisions of this court have alluded to appeals of this character as legislative rather than judicial. In A., T. & S. F. Ry. Co. v. State, 23 Okla. 510, 101 P. 262; C., R. I. & P. Ry. Co. v. State, 24 Okla. 370. 103 P. 617: A., T. & S. F. Ry. Co. v. Miller, 28 Okla. 109, 114 P. 1104; Pioneer T. & T. Co. v. City of Bartlesville, 40 Okla. 583 139 P. 694, rates of transportation and transmission companies were involved. In Oklahoma Natural Gas Co. v. Corporation Commission, 90 Okla. 84, 216 P. 917, the right of this court to establish a rate in lieu of the rate fixed by the Corporation Commission was not challenged. In McAlester Gas & Coke Co. v. Corporation Commission. 102 Okla. 118, 227 P. 83, the right of this court to establish a temporary rate was not challenged. In City of Poteau v. American Indian Oil & Gas Co., 159 Okla. 240, 18 P. (2d) 523 the parties stipu'ated that this court might fix a rate and the question of authority of this court was not presented. In Oklahoma Gas & Elec. Co. v. Wilson & Co., 54 Fed. (2d) 596 the holding of the court was predicated upon the cases involving transportation and transmission companies. In Oklahoma Natural Gas Co. v. Russell, 261 U. S. 290, 67 L. Ed. 659, the Supreme Court of the United States assumed without deciding that the appeal was analogous to appeals in transportation and transmission company rate cases.

The fundamental concept of the functions, duties, and powers of the Corporation Commission and the limitations thereon was that a tribunal was created which would have within its power legislative, administrative, quasi judicial, and executive authority to control and restrict public service corporations therein defined, and thereafter declared, in their service of the people of the state, to which the people, as well as the corporations themselves, might resort to prevent unjust practices and discriminations resulting in inequity and inequality in the

conduct of orderly business. It was the manifest purpose, as disclosed by the Constitution, that an appeal could be perfected to this court as to the action of said Commission in so far as it related to transportation and transmission companies, and as further authorized by legislative enactment, as it related to public service corporations, and this court, adopting the finding of the Commission as prima facie just, reasonable, and correct (sec. 22, art. 9), should review the action of the Commission.

It was therein provided (section 22, art. 9) that this court should have jurisdiction to consider and determine the reasonableness and justness of the action of the Commission as well as any other matter arising under such appeal. It was further provided (sec. 34, art. 9) that the provisions of said article shou'd always be so restricted in their application as not to conflict with any provision of the Constitution of the United States. It is further provided that before the Commission shall fix any rate, charge, or classification of traffic, or make any order directed against any company by name, the company affected shall be given at least 10 days' notice of the contemplated action and shall "be afforded a reasonable opportunity to introduce evidence and to be heard thereon to the end that justice may be done, and shall have process to enforce the attendance of witnesses" (sec. 18, art. 9). It was further provided that no additional evidence shou'd be taken in this court, but in case the evidence appeared insufficient, the court might, when it deemed necessary, remand the cause to the Commission for the taking of further evidence. In order to make it absolutely clear that this court should have sole and exclusive authority over the action of the Commission, the Constitution specifically provided that no court, other than this court by way of appeal. should have jurisdiction to review, reverse, correct, or annul any action of the Commission within the scope of its authority or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the Commission in the performance of its official duties. It was provided that the Commission should have the authority of a court of record to enforce compliance with its lawful orders and in this connection it is significant to note that the constitutional provision (sec. 19, art. 9) specifically provides that the affected company shall be proceeded against by due process of law before the Commission sitting as a court and shall be afforded opportunity to introduce evidence and to be heard "as well against the valid-

ity, justness or reasonableness of the order or requirement alleged to have been violated, as against the liability of the company for the alleged violation."

From a careful analysis of all of the provisions of the Constitution it is manifest that a tribunal was set up invested with quasi-judicial power as well as legislative power, limited as set forth therein, with the specific provision that those subject to its jurisdiction should have a right to introduce evidence and be heard upon all matters which affected their rights, whether constitutional or otherwise, in so far as said rights were within the limited jurisdiction of the Commission. A full hearing was therefore provided in the first instance before the Corporation Commission, and an appeal was provided to this court from a determination by the Corporation Commission, which review contained all the elements of due process and the equal protection of the laws guaranteed by the federal and state Constitutions.

These guaranties were fully safeguarded to the company by the provision for a full hearing before the Commission and by an opportunity to introduce evidence to show the invasion of its rights. It matters not, fundamentally, in what manner the judicial process is set in motion if a judicial tribunal is set up with power and authority to protect such guaranties. In Federal Radio Commission v. Nelson Bros. B. & M. Co., 289 U. S. 266, 77 L. Ed. 1166, the Supreme Court of the United States, speaking through Mr. Chief Justice Hughes, said:

"If the questions of law thus presented were brought before the court by suit to restrain the enforcement of an invalid administrative order, there could be no question as to the judicial character of the proceeding. But that character is not altered by the mere fact that remedy is afforded by appeal. The controlling question is whether the function to be exercised by the court is a judicial function, and, if so, it may be exercised on an authorized appeal from the decision of an administrative body. We must not 'be misled by a name, but look to the substance and intent of the proceedings.' United States v. Ritchie, 17 How. 525 15 L. Ed. 236, 238; Stephens v. Cherokee Nation, 174 U. S. 445, 479, 43 L. Ed. 1041, 1053, 19 S. Ct. 722; Federal Trade Commission v. Eastman Kodak Co., 274 U. S. 619, 623, 71 L. Ed. 1238, 1240 47 S. Ct. 688; Old Colony Trust Co. v. Commissioner of Internal Revenue, 279 U. S. 716, 722-724, 73 L. Ed. 918, 925, 926, 49 S. Ct. 499. 'It is not important,' we said in Old Colony Trust Co. v. Commissioner of Internal Revenue, supra, 'whether such a proceeding was originally begun by an administrative or executive determination, if when it comes to the court, whether legislative or constitutional, it calls for the exercise of only the judicial power of the court upon which jurisdiction has been conferred by law.' Nor is it necessary, that the proceeding to be judicial should be one entirely de novo. When on the appeal, as here provided, the parties come before the Court of Appeals to obtain its decision upon the legal question whether the Commission has acted within the limits of its authority, and to have their rights, as established by law, determined accordingly, there is a case or controversy which is the appropriate subject of the exercise of judicial power. The provision that, in case the court reverses the decision of the Commission, 'it shall remand the case to the Commission to carry out the judgment of the court' means no more than that the Commission in its further action is to respect and follow the court's determination of the questions of law. The procedure thus contemplates a judicial judgment by the Court of Appeals and this court has jurisdiction, on certiorari to review that judgment in order to determine whether or not it is erroneous. Osborn v. Bank of United States, 9 Wheat. 738, 819, 6 L. Ed. 204, 223; Re Pacific R. Commission (C. C.) 12 Sawy. 559, 32 Fed. 241, 255; Federal Trade Commission v. Klesner, 280 U. S. 19, 74 L. Ed. 138, 50 S. Ct. 1, 68 A. L. R. 838, supra; Federal Trade Commission v. Raladam Co., 283 U. S. 643, 75 L. Ed. 1324, 51 S. Ct. 587, 79 A. L. R. 1191, supra; Old Colony Trust Co. v. Commissioner of Internal Revenue, supra."

In State of Washington ex rel. Oregon R. & N. Co. v. Fairchild, 224 U. S. 510, 56 L. Ed. 863, it is said:

"It (the railroad) complains that the statute did not afford it the means of making a defense before the Commission, and yet required it to attack the reasonableness of the order on such evidence as it might have been able to produce before the administrative body. * * *

"The defendant insists, however, that no matter how complete the right to be heard before the Commission, the statute, having denied all other opportunity for testing the validity of the order in the state courts, furnished an utterly inadequate judicial review because, as the carrier could not anticipate what decision would be made, it was unjust to require it to produce evidence to show in advance the unreasonableness of an order the terms of which were not known. From this it argues that the statute was unconstitutional in so far as it prevented the court from receiving competent and noncumulative testimony tending to prove that there was no public necessity for making the track connection, and that the order was void. * * *

"Having been given full opportunity to be

heard on the issues made by the complaint and answer, and as to the reasonableness of the proposed order, and having adopted the statutory method of review, this company cannot complain. It had the right to offer all competent testimony before the Commission, which, in view of the form of proceedings authorized by the statute, acted in this respect somewhat like a master in chancery who has been required to take testimony and report his findings of fact and conclusions of law. The court would test its correctness by the evidence submitted to the master. Nor would there be any impairment of the right to a judicial review because additional testimony could not be submitted to the chancellor. The statute enlarges what this court has recognized to be proper practice in equity cases attacking such regulation. There the hearing is de novo, and there is no prohibition in equity against offering all competent evidence to prove that the order was unreasonable. * * *

"There is no claim here that the evidence rejected by the superior court was newly discovered, or that its materiality could not have been anticipated, or that for any reason the defendant had been prevented from submitting to the Commission the testimony it offered in court to show that the cost would be $21,000 instead of $7,500. Nor was there any allegation of surprise, mistake, or other extraordinary fact requiring the admission of such evidence in order to preserve the right guaranteed by the Constitution. There is therefore no call for a decision as to whether, under those circumstances, such evidence should be admitted, or the case remanded so that the Commission might consider material and probably controlling testimony which the carrier, without fault on its part, had failed to submit on the first hearing.

"If then, the defendant had noticed and was given the right to show that the order asked for, if granted, would be unreasonable, it has not in this case been deprived of the right to a hearing. That being so, it leaves for consideration the contention that, as a matter of law, the order, on the facts proved, was so unreasonable as to amount to a taking of property without due process of law. This necessitates an examination of the evidence not for the purpose of passing on conflicts in the testimony, or of deciding upon pure questions of fact, but as said in Kansas City So. Railroad Co. v. C. H. Albers Commission Co., 223 U. S. 591, ante 565, 32 Sup. Ct. Rep. 320, from an inspection of the 'entire record including the evidence, if properly incorporated therein, to determine whether what purports to be a finding upon questions of fact is so involved with and dependent upon such questions of law as to be in substance and effect a decision of the latter.' Cedar Rapids Gas'ight Co. v. Cedar Rapids, 223 U. S. 655, ante 374, 32 Sup. Ct.

Rep. 389; Graham v. Gill, 223 U. S. 643, ante 586, 32 Sup. Ct. Rep. 396. Here the question presented is whether, as a matter of law, the facts proved show the existence of such a public necessity as authorize a taking of property."

See, also, International Shoe Co. v. Federal Trade Commission, 208 U. S. 291, 74 L. Ed. 431; Arkansas Wholesale Grocers Ass'n et al. v. Federal Trade Commission, 18 Fed. (2d) 866 (C. C. A. 8th Cir.), Cert. denied 275 U. S. 266, 77 L. Ed. 1166.

On appeal this court exercises an independent judgment upon the law and facts, and this is the criterion for the determination of due process. Ohio Valley Water Co. v. Ben Avon Burrough, 253 U. S. 287, 64 L. Ed. 908; Crowell v. Benson, 285 U. S. 22, 76 L. Ed. 598. By the provisions of the Constitution the company is entitled to introduce evidence before the Commission showing the violation of its constitutional rights.

We conclude, therefore, that a tribunal has been set up wherein appellants can present all of their evidence touching their rights; that it is the duty of the Corporation Commission to refrain from invading any of said rights in such manner as to deprive them thereof in a manner not sanctioned by the Constitution of the United States and of this state, and the laws thereof; that this court, on review by appeal as provided by law, will judicially determine the rights of the parties on the record as finally presented on appeal; that in so far as chapter 176, or the amendments thereof, attempts to confer legislative power on this court, the same is unconstitutional, but otherwise valid.

Appellants complain of the methods used by the Commission in fixing the annual ginning rate. It is contended that the use of composite figures showing the average rate of the rates for five preceding years is an improper basis for the fixing of a rate, and that it was error to exclude from said computation the figures for the year 1934-35. It is further urged that the Commission unlawfully and without authority rejected certain data contained in the reports filed by the ginners in that certain expenses of operation were reported and disallowed by the Commission as improper items of expense. The order of the Commission shows that "the ginners renewed their request at the instant hearing that the state be used as a unit for rate-making purposes rather than the zone system." This statement is not challenged or contradicted by appellants. Al-

though complaint is made that it is improper to use composite figures as a rate base, appellants are unable to suggest other means which would be proper and equitable in fixing a rate for the entire state.

By an examination and study of the exhibit filed in this court showing the facts regarding the operation of each cotton gin in the state reporting to the Commission, it becomes evident that the profits derived by each gin are dependent largely upon the number of bales ginned. However, many instances are disclosed where certain gins sustained losses and others substantially profited where substantially the same amount of cotton was ginned by each. The difficulty of fixing a rate which would allow a reasonable profit to each and every gin within the state is recognized by the Commission and has heretofore been noticed by this court.

Various intervening factors which have to do with operation prevent the establishment of a rate which wi'l produce substantially the same profit to each and every gin within the state. The record discloses that a rate which would return a profit to certain gins reporting to the Corporation Commission would be unfair, unreasonable, exorbitant, and beyond the fair value of the services rendered. In reviewing the action of the Commission in fixing and determining the rate we must be guided by the principles hereinafter stated, bearing in mind that the ultimate rate established will not and cannot operate to provide each and every gin operator within the state a fixed profit, or wholly protect him against loss.

We can add nothing to the voluminous legal discussions concerning the meaning of "reasonable rates." The difficulty of defining this expression, and of determining its application to the facts of individual cases, has been recognized by all the courts. We can only call attention to certain expressions of this court and other courts on this subject, and as applied to the case under consideration such expressions are not easy of application.

In the case of Oklahoma Gin Co. v. State, 63 Okla. 10, 158 P. 629 (reversed on other grounds by the Supreme Court of the United States, 252 U. S. 339, 40 S. Ct. 341, 64 L. Ed. 600), this court in syllabus 3 said:

"In fixing the rates and charges complained of, the sole question before the Commission was whether the charge was a reasonable exaction to be paid by the individual dealing with the company, considering the service to be rendered by the company. With the question whether or not the rate when applied to all the gins concerned would yield sufficient revenue to pay the operating expenses and keep all of them running for any length of time, the Commission had no concern, and hence the effect of an admission by the Corporation Commission, in a proceeding for contempt against one company whose rates and charges had been fixed, for violating the order, that such it would not, is nil."

In Salt River Valley Canal Co. v. Nelssen, 10 Ariz. 9, 85 P. 117, 12 L. R. A. (N. S.) 711, 16 Ann. Cas. 796, it is said:

"In determining what is a reasonable price to be charged for its services by a public corporation, an examination must be made, not only from the point of view of the corporation, but from that of the one served, also. A reasonable rate is not one ascertained solely from considering the bearing of the facts upon the profits of the corporation. The effect of the rate upon persons to whom services are rendered is as deep a concern in the fixing thereof as is the effect upon the stockholders or bondholders. A reasonable rate is one which is as fair as possible to all whose interests are involved."

In Brunswick & T. Water Dist. v. Maine Water Co., 99 Me. 371, 59 Atl. 537, it is said:

"The word 'reasonable,' in the statement of the principle that a water company should be entitled to charge reasonable rates, is a relative term, and what is reasonable depends upon many varying circumstances. An equivalent to the prevailing rate of interest might be a reasonable return and it might not; 'it might be too high or it might be too low.' It might be reasonable, owing to peculiar hazards or difficulties in one place to receive greater returns there than it would be in another upon the same investment. Then, their reasonableness relates to both the company and the customer. Rates must be reasonable to both and, if they cannot be to both, they must be to the customer."

In Turner v. Connecticut Co. 91 Conn. 692, 101 Atl. 88, it is said:

"The reasonableness of a rate fixed by or for a public service corporation is to be determined after viewing its effect on the public as well as the company; the rate being unreasonable if so low as to be destructive of the company's property or if so high, either intrinsically or because discriminatory, as to be an unjust exaction from the public."

In the matter of fixing rates for public utilities the order of the Corporation Commission shall be deemed prima facie just, reasonable, and correct. Section 22, art. 9, Constitution; Kansas, Oklahoma & G. Ry. Co. v. State, 127 Okla. 240, 260 P. 468; C., R. I. & P. Ry. Co. v. State, 123 Okla. 31, 251

P. 1044; Shaffer Oil & Refining Co. v. Creek County Gas Co., 114 Okla. 258, 246 P. 630.

In the case of Muskogee Gas & Elec. Co. v. State. 81 Okla. 176, 186 P. 730, it is said:

"The fixing of rates is not a judicial function and the right to review the conclusions of a board with legislative power such as that exercised by the Corporation Commission, is limited in determining whether the board acted within the scope of its authority or the order is without foundation in evidence or a constitutional right of the public utility has been infringed upon by fixing rates which are confiscatory or insufficient to pay the cost of the service and return to the utility a reasonable profit on the investment."

The scope of inquiry of a court dealing with a judicial review, such as we are here concerned with, is better stated, we believe, in the case of City of Huntington v. Public Service Commission (W. Va.) 133 S. E. 114, as follows:

"Orders of the Public Service Commission fixing rates are not subject to judicial interference, unless: (1) beyond the power which it could constitutionally exercise; or (2) beyond its statutory power; or (3) based upon a mistake of law; or (4) the rate is so low as to be confiscatory and in violation of the constitutional prohibition against taking property without due process of law; or (5) if the Commission acted so arbitrarily and unjustly as to fix rates contrary to evidence, or without evidence to support it; or (6) if the authority therein involved has been exercised in such an unreasonable manner as to cause it to be within the elementary rule that the substance, and not the shadow, determines the validity of the exercise of the power."

In the case of Public Utilities Commission ex rel. City of Springfield, v. Springfield Gas & Elec. Co., 291 Ill. 209, 125 N. E. 891, it is said:

"The fixing of rates for public utilities is not a judicial function, and the right to review the conclusion of the Legislature or administrative body acting under delegated authority is limited to determining whether or not the Legislature or the administrative body acted within the scope of its authority, or the order is without substantial foundation in the evidence, or some constitutional right of the utility has been infringed by fixing confiscatory or insufficient rates.

"If an order of the Public Utilities Commission fixing rates does not contravene any constitutional limitation, and is within the constitutional and statutory authority of the Commission, and has substantial basis in evidence, it cannot be set aside by the courts, a court being without authority to do so unless the order is against the manifest weight of the evidence. * * *

"A public utility is entitled to ask from the Public Utilities Commission's rate a fair return on the value of the property or capital it employs for public convenience, but the public is entitled to demand that no more be exacted from it than the services rendered are worth."

In the case of Central Northwest B. Men's Association v. Illinois Commerce Commission, 337 Ill. 149, 168 N. E. 890, it is said:

"In reviewing order of Illinois Commerce Commission, Supreme Court is limited to a determination of whether Commission acted within scope of its authority, whether order has substantial foundation in evidence, and whether any substantial right has been infringed by such order.

"Supreme Court is not authorized to substitute its judgment for that of Illinois Commerce Commission, in order to put itself in place of Commission and try anew issues presented."

See, also, Alabama Power Co. v. Alabama Public Service Commission (Ala.) 107 So. 71.

By the provisions of section 22, article 9, of the Constitution this court is specifically granted jurisdiction "to consider and determine the reasonableness and justness of the action of the Commission appealed from." In the instant case, therefore, we cannot escape the responsibility of determining whether or not the rate fixed by the Commission is just and reasonable. We quote from the body of the opinion in the case of City of Huntington v. Public Service Commission (W. Va.) 110 S. E. 192:

"As said in Chicago & G. T. R. Co. v. Wellman, 143 U. S. 339, 344, 12 Sup. Ct. 400, 402 (36 L. Ed. 176): 'The Legislature has power to fix rates, and the extent of judicial interference is protection against unreasonable rates.' * * *

"It cannot reasonably be said that there cannot be a review except when the rates are confiscatory. The Commission's authority relates to the effect they produce; that is, whether they are reasonable, just. and fair to the utility and its patrons. The result must not be inequitable to either; the rights of both are to be considered and preserved. If either is to be protected to the disadvantage of the other, the utility must bear the consequences."

In the case of Public Service Gas Co. v. Board of Public Utility Com'rs (N. J. Law) 87 Atl. 651. it is said:

"The next question is whether the rate

fixed was just and reasonable. On the one hand a just and reasonable rate can never exceed, perhaps can rarely equal, the value of the service to the consumer. On the other hand, it can never be made by compulsion of public authority so low as to amount to confiscation. A just and reasonable rate must certainly fall somewhere between these two extremes, so as to allow both sides to profit by the conduct of the business, and the improvements of methods and increase of efficiency. Justice to the consumer, ordinarily, would require a rate somewhat less than the full value of the service to him; and justice to the company would, ordinarily, require a rate above the point at which it would become confiscatory. To induce the investment and continuance of capital there must be some hope of gain commensurate with that realizable in other business; the mere assurance that the investment will not be confiscated would not suffice. Many of the cases in the federal courts and in the courts of our sister states have involved a determination of the confiscatory character of the rate under the Fourteenth Amendment or similar constitutional provisions. We are not called upon to deal with this constitutional question; we have to do only with the question submitted to our judgment by the Legislature and expressed in the language of the statute authorizing the commissioners to fix just and reasonable individual rates. * * *"

In the case of Telluride Power Co. v. Public Utilities Commission (Utah) 8 Fed. Supp. 341, it is said:

"In fixing fair and reasonable rates for service by public utility consumer's ability to pay and value of service to him are not paramount or controlling, but worth of service is important element for just consideration in fixing rates which should be reasonable to utility and customer (Const. Amend. 14)."

In the case of Great Northern Utilities Co. v. Public Service Commission of Montana (Mont.) 293 P. 294, it is said:

"What constitutes 'just and reasonable' rates required to be fixed by Public Service Commission for services of public utility depends on facts of particular case. Rev. Codes 1921, sec. 3899."

See, also, State v. Department of Public Works of Washington (Wash.) 38 P. (2d) 350; 5 C. J. 23.

The authority of the Corporation Commission to fix a ginning rate is unquestionable, subject to the limitations that said rate must be "reasonable," not only as to the operators of gins, but also to the general public requiring such service. It has authority to fix a general rate applicable to all gins in the state, or it can make a separate rate, based on supporting evidence requiring same, as to separate localities, communities, or individual gins, consistent with the principles of reasonableness, justice, and lack of discrimination. If the general rate be unreasonable as it affects an individual gin, the owner is entitled to make such showing and the Commission is authorized to eliminate such inequity, subject to judicial review by this court.

It is urged that the Corporation Commission, in fixing the rate herein involved, violated certain principles announced by this court in the case of Oklahoma Cotton Ginners Ass'n v. Walker, 168 Okla. 459, 33 P. (2d) 766. Said case does not condemn the method used by the Commission in fixing the rate involved herein, but vacated and set aside a former rate fixed by the Commission on the ground that the same was inadequate in certain portions of the state. It may be noted that the rate involved therein was 20 cents per 100 pounds of picked cotton, and 22½ cents per pound for snapped or bollie cotton. In the instant case the question of discrimination between cotton ginners is not involved, and no individual or corporation has appealed or attempted to show that the rate which is fixed for the state is inadequate under the peculiar circumstances of a particular case. We are not called upon, therefore, to determine whether or not the rate is adequate in isolated cases, but only to determine that the rate is reasonable and just as a unit rate for the entire state.

We will briefly refer to those cases cited by appellants to establish the contention that the Corporation Commission may not use composite figures as a base for computing the rate. The case of Northern Pac. R. Co. v. Department of Public Works, 268 U. S. 39, 45 S. Ct. 412 69 L. Ed. 836, was a case where the Supreme Court of the United States held that to determine the cost of hauling logs through a small section of a state by a transcontinental railroad, it is erroneous to create composite figures representing the weighted average operating cost per thousand gross ton miles of all revenue freight carried on the railroad systems engaged in such traffic and make that figure an estimate for the operating cost of hauling logs. It was clearly pointed out in the opinion that the fixing of a unit cost figure in that case excluded and did not take into account certain factors which were entitled to consideration in determining a reasonable rate. These various factors were pointed out. In the instant case appellants have failed to call at-

tention to a determinative factor which did not receive full consideration by the Commission, in so far as fixing a state-wide rate is concerned. Various local conditions could be considered only in dealing with local rates.

In the case of Chicago. M. & St. P. Ry. Co. v. Public Utilities Commission of Idaho, 274 U. S. 344, 47 S. Ct. 604, 71 L. Ed. 1085, it was held that the Commission erred in refusing to consider evidence to the effect that rates for the intrastate transportation of saw logs were confiscatory because the carriers made no showing as to gains or losses resulting from the interstate transportation of lumber. It was held that the state has no power to require the carriers to haul logs at a loss or without compensation that is reasonable and just even if they receive adequate revenues from the intrastate log haul and the interstate lumber haul taken together. Such action on the part of the Commission was held to be arbitrary and a denial of "due process of law." In so far as the instant case is concerned, this case is authority for the rule that where the rates are attacked as being confiscatory, the courts may inquire into the methods by which the conclusions of the regulatory body are reached. The case is not an applicable authority upon any disputed or controverted issue of law involved herein.

We find no rule of law announced in the case of Oklahoma Gas & Electric Co. v. Corporation Commission of Oklahoma, 1 Fed. Supp. 966, also cited by appellants, which is applicable to the facts in this case as we construe them. There is no dispute that an order of the Commission cannot be sustained if based on erroneous principles or is beyond the power of the Commission.

Appellants make some contention as to the action of the Commission in revising the reports submitted by the individual gin owners in the disallowance of certain items as expense. No evidence was submitted and no showing made as to the total amount of such disallowed items, so that we are unable to determine whether such action, if improper, would substantially affect the ultimate result reached by the Commission. The general nature of the items disallowed are stated, and the record shows that the auditor for the Commission testified that the items disallowed were not proper items of expense. His testimony was not contradicted nor denied. Appellants have failed to furnish a basis upon which we may consider the propriety of the action of the Commission in this regard.

In view of the entire record we must conclude that the means adopted by the Commission in ascertaining what a just and reasonable rate would be for the current season were proper and that appellants have wholly failed to overcome the presumption of the justness and reasonableness of the rate so fixed.

Accordingly the order of the Commission is sustained.

McNEILL, C. J., and RILEY and CORN, JJ., concur. BAYLESS, J., concurs in conclusion, but dissents as to the character of review on appeal. BUSBY and WELCH, JJ., dissent as to conclusion, but concur as to the character of review on appeal. PHELPS and GIBSON, JJ., dissent.

WELCH, J. (dissenting). As I construe the record, these rates, when applied throughout the state, will be in many instances inequitable, improper, and inaccurate as based upon the evidence shown in the record. For that reason I think these rates for the entire state do not merit our judicial approval.

I agree with the majority opinion as to the character of our review of the order of the Commission, but dissent from the sustaining of the Commission's order for the reasons stated.

BUSBY, J. (dissenting in part and concurring in part).

I am unable to concur in that portion of the majority opinion which approves the principle that a general gin rate can be established throughout the state by an order of the Corporation Commission in the face of a showing that conditions affecting the costs of ginning are widely different in different localities.

It is of primary importance in establishing a valid rate that the same shall be fair and reasonable, both from the standpoint of the corporation which must operate under the rate and from the standpoint of the public which must pay the rate for the services furnished. Thus the rate established must be reasonably commensurate with the services rendered, and, at the same time, it must be compensatory and not confiscatory.

It is a well-known fact, which is reflected by the record in this case, that the rate at which cotton can be profitably ginned is closely related to and dependent upon local conditions, which vary in different vicinities within the state. Thus a rate which is compensatory in a favored locality may be confiscatory when applied to gins less for-

tunately situated. Similarly, a rate which affords reasonable compensation in the average and usual locality will, in a locality where all conditions are favorable to the industry, enable ginners to make a profit which is unreasonable and unconscionable. While an established rate should not be held confiscatory and invalid merely because improperly managed gins cannot operate profitably under it, an entirely different question and situation is presented where the inability to profitably operate arises from conditions existing generally in the locality wherein the gin is situated. Likewise the protection of public rights and especially the protection of the rights of gin customers present a different situation for rate-making purposes in an extremely favored locality than the situation which exists in an average and normal community. No reason exists in law or in equity for permitting ginners so situated to reap a profit beyond that properly allowable on application of the rules established in rate-making cases. In my judgment any rate order which undertakes to establish the price for which cotton shall be ginned should make proper and adequate provision for those zones and localities where, due to peculiar prevailing conditions, the ginning of cotton cannot profitably be accomplished by a properly managed gin at the same rate that cotton may be ginned in other and more fortunately situated localities and such an order should likewise contain proper provision to bar excess profits in extremely favored vicinities.

I apprehend that the gin owners who are, under the established state-wide rate, compelled to operate at a loss, will gain little or no consolation from the fact that gins in other portions of the state are realizing profits in connection with their business. Justice requires that the law furnish a more substantial remedy than mental consolation. The remedy suggested in the majority opinion is in practical operation one of form rather than of substance. It is intimated therein that the remedy of the oppressed gin owner is to seek an exception to the gin rate after it has been established and its unreasonableness becomes apparent. It is therein stated:

"If the general rate be unreasonable as it affects an individual gin, the owner is entitled to make such showing, and the Commission is authorized to eliminate such inequity, subject to judicial review by this court."

Since we are refusing in this case to disturb the order of the Commission in so far as it establishes a confiscatory rate when applied to some of the localities in the state, the intimation is that the remedy suggested is exclusive. It is not my purpose to deny or dispute the existence of the remedy thus recognized, but I dissent from the suggestion which arises from the result herein announced that such is the only remedy available or even the proper remedy in this particular case.

As I view the matter, confiscatory rates should be avoided in the first instance. In cases such as the one now before us, where it appears that a contemplated rate, while compensatory to some, when viewed from a state-wide standpoint, will be confiscatory in its application when enforced in other localities throughout the state, the inequity should be avoided by proper provision in the established rate reasonably calculated to protect ginners in the unfavorable localities. Relief should not be withheld until the certain and confiscatory result in its application is demonstrated.

The power to establish a rate is essentially legislative in character, since it looks to the future and not to the past. The power should be so exercised as to make proper provisions for the future. An arbitrary exercise of the power in the first instance should not be excused upon the theory that there remains a somewhat empty legal remedy available to the injured person. The condemned man gains little benefit from a pardon granted after his execution. The ginner who is forced into insolvency by a confiscatory rate will profit little by a subsequent administrative or judicial declaration that he should previously have been permitted to make a compensatory charge for the services rendered. Similarly, the gin customer who, living in a favored community, has been charged an exorbitant and profiteering rate, would experience little benefit by a subsequent declaration that his cotton should have been ginned for a price which allowed only a reasonable profit to the ginner.

Thus, in my judgment, we should in this case declare the general rate unreasonable in so far as it applies to localities where its application will result either in confiscation of property of the ginners or in unwarranted or unconscionable profit to the ginner.

The cause should be remanded, with directions to incorporate in the order proper provisions to guard against these inequitable situations.

I concur with the views adopted whereby

the legislative jurisdiction of this court in connection with appeals from the Corporation Commission is restricted to cases involving the rates, charges, or classifications of traffic of transportation or transmission companies.

This court in its dominant aspects is a strictly judicial body. It is prohibited by constitutional provision from encroaching, either with or without legislative sanction, upon the legislative and executive branches of the state government.

The Corporation Commission was not intended as a gateway through which the Legislature, by exercising its authority to amend conferred by section 35 of art. 9, could transform this body into an administrative board exercising legislative authority, thereby authorizing us to assume the role of a dictator in a limited field. The preservation of a system of checks and balances by maintaining the separate identity of the three branches of government lies at the very foundation of our constitutional government. If a change be expedient, then it should and must be accomplished by means of constitutional amendment only. Since this case does not involve a transportation or transmission company, our review is strictly judicial.

## On Rehearing.

GIBSON, J. (dissenting). I cannot agree with the opinion of the majority of my associates. Cotton gins maintained and operated for the purpose of ginning seed cotton of the general public are public utilities. Sess. Laws 1915, chapter 176, § 1, amended by Sess. Laws 1929, chapter 240, § 1 (section 3676. O. S. 1931). As such they are subject to the jurisdiction of the State Corporation Commission. Sess. Laws 1915, chapter 176, § 2 amended by Sess. Laws 1923, chapter 191, § 1, amended by Sess. Laws 1929, chapter 240 § 2 (section 3677, O. S. 1931).

Section 5, chapter 176, Sess. Laws 1915 (section 3681, O. S. 1931), provides:

"The orders made by said Commission fixing rates, charges, rules and regulations as to any person, persons, or corporation operating any gin or gins may be reviewed on appeal by the Supreme Court in the same manner, form, jurisdiction and procedure as apply to such orders made relative to transportation and transmission companies."

Sections 18 to 34, inclusive, article 9 of the state Constitution, confer upon the Corporation Commission jurisdiction to regulate rates, charges, service, and practices of transportation and transmission companies, and prescribe modes of procedure and appeal. Section 20, article 9, of the Constitution, provides for an appeal to the Supreme Court from orders of the Commission affecting rates, charges, service, and practices of such transportation and transmission companies; and section 23 of the same article provides that if the Supreme Court shall reverse any such order, it shall substitute therefor such order as in its opinion the Commission should have made at the time of entering the order appealed from. Under section 18, article 9, the Commission's jurisdiction may be enlarged and extended by the Legislature over the affairs of other corporations and persons. Section 19, article 9, confers certain powers and authority on the Commission "in all matters pertaining to the public visitation, regulation, or control of corporations," and also provides:

"The Commission may be vested with such additional powers, and charged with such other duties (not inconsistent with this Constitution) as may be prescribed by law, in connection with the visitation, regulation, or control of corporations, or with the prescribing and enforcing of rates and charges to be observed in the conduct of any business where the state has the right to prescribe the rates and charges in connection therewith."

Section 35, article 9, provides that:

"The Legislature may by law, from time to time, alter, amend, revise or repeal sections from 18 to 34, inclusive, of this article, or any of them, or any amendment thereof; Provided, That no amendment made under authority of this section shall contravene the provisions of any part of this Constitution other than said sections last above referred to or any such amendment thereof."

Chapter 176, Sess. Laws 1915, and the amendments thereof, declared gins operated for the purpose of ginning cotton of the general public to be public utilities and extended the jurisdiction of the Corporation Commission to the general supervision of such public utilities. It is under the provisions of this act as amended that the order of the Commission in question is based.

In my opinion chapter 176, Sess. Laws 1915, is an amendment of the Constitution under authority of section 35, article 9. It confers upon the Supreme Court the same jurisdiction on an appeal in utility rate cases as is conferred upon the court in transportation and transmission cases by sections 22 and 23 of article 9.

Authority for the Legislature to confer jurisdiction on the Supreme Court to review legislatively rate orders of the Commission, other than those prescribed by it for transportation and transmission companies, is found in section 20, article 9 of the Constitution, wherein it is provided:

"The Legislature may also, by general laws, provide for appeals from any other action of the Commission."

In Shawnee Gas & Electric Co. v. State ex rel. Shawnee City Waterworks, 31 Okla. 505, 122 P. 222, 224, we said:

"The same section of the Constitution (section 20) authorizes the Legislature to provide by general law for appeals from other actions of the Commission than those enumerated in section 20, supra."

The actions referred to as being "enumerated" are those respecting transportation and transmission companies. That provision of section 20 was wholly unnecessary to confer on this court exclusive jurisdiction to review, judicially, orders of the Commission. Judicial appeals may be authorized by the Legislature without the constitutional sanction contained in section 20. The right to appeal is the subject of legislative grant, but the judicial authority to be exercised by the Supreme Court is not. Such power was conferred by the Constitution independent of any legislative act. What character of "appeals from any other actions" was intended by this provision of the Constitution? The power to authorize a judicial appeal was inherent in the Legislature. The power to authorize a legislative review was not. If it authorized the power of judicial review only, the provision was superfluous. In order to accord to it any force whatsoever, it must be considered as authorizing the Legislature to delegate to the Supreme Court authority to review legislatively orders of the Commission involving rates, charges, and classifications of traffic of such utilities and public service corporations as might be subjected to the control of the Corporation Commission as well as orders involving rates, etc., of transportation and transmission companies. An elementary rule of constitutional construction is that, where possible, effect should be given to each word and every part, and unless there is some clear reason to the contrary, no portion of the fundamental law should be treated as superfluous nor should a constitutional provision be rendered meaningless by the courts. 6 R. C. L. § 42. By the act of 1915, and the amendments thereof, the Legislature has availed itse'f of the right granted by the Constitution to place in the Supreme Court the power of legislative review of orders of the Commission in cotton gin cases. By said act it has altered, amended, or revised sections 18 to 34, inclusive, of article 9, and whether the act was an alteration or an amendment or a revision is wholly immaterial. The authority therefore having been granted by the Constitution, it cannot be said that said act violates section 1, article 4, which reads:

"The powers of the government of the state of Oklahoma shall be divided into three separate departments: The legislative, executive, and judicial; and except as provided in this Constitution, the legislative, executive, and judicial departments of government shall be separate and distinct and neither shall exercise the powers properly belonging to either of the others."

The act must therefore be accorded the same force and effect as if the same had been originally incorporated in article 9 by the framers of the Constitution. As such constitutional amendment, the act in question confers on this court the same jurisdiction on appeal as is conferred upon it by the Constitution in transportation and transmission cases, and the action of this court on appeal is the final step in the administrative proceedings relating to the control of the utility mentioned in said act.

In the majority opinion it is pointed out that in the title to the act in question there is nothing expressing the intention of the Legislature to amend the Constitution, and says:

"In the first place, if chapter 176, supra, is amendatory of sections 18 to 34 of article 9 of the Constitution, it is so only by implication, and amendments of the Constitution by implication are not favored. Adams v. City of Hobart, 166 Okla. 267. 27 P. (2d) 595; Hopkins v. Anderson (Cal. App.) 12 P. (2d) 1043; City of Klamath Falls v. Oregon Liquor Control Comm., 146 Ore. 83, 29 P. (2d) 564; Cooley, Constitutional Limitations, vol. 1 (7th Ed.) p. 217. It would seem that the Legislature if it intended to amend the fundamental instrument on which the government of this state was erected, would have expressed itself in no uncertain terms as to the character of its action."

Amendments of the Constitution by implication have not been condemned by this court. The Fourth Legislature passed an act (chapter 10, Sess. Laws 1913), the title of which is as follows:

"An Act conferring authority upon the Corporation Commission to adjust controversies between parties growing out of refunds for public service: to require all refunds to be turned over to the Commission; to determine

the amount of refund and to whom due; and declaring an emergency."

In A., T. & S. F. R. Co. v. State, 85 Okla. 223, 206 P. 236, it was held that chapter 10, Sess. Laws 1913, was passed under the provisions of section 35, article 9 of the Constitution, and was an amendment to the Constitution. To the same effect is C., R. I. & P. Ry. Co. v. Brown, 105 Okla. 133, 232 P. 43. There is no express statement in the title of that act that the Constitution was amended by the act.

The Fourth Legislature also passed another act (chapter 93, Sess. Laws 1913), the title of which is as follows:

"An Act to extend the jurisdiction of the Corporation Commission over the rates, charges, services, and practice of water, heat, light and power companies and to give said Commission general supervision over such utilities, and declaring an emergency."

After the passage of this act the Corporation Commission made an order adjusting rates charged by a public utility which was subjected to its jurisdiction by the terms of this act. An appeal was taken to this court. Oklahoma Nat. Gas Co. v. State, 78 Okla. 5, 188 P. 338. Therein we held that the review here was legislative. In order for this court to so hold, it was necessary for the court to consider chapter 93, Sess. Laws 1913, as an amendment of sections 18 to 34, inclusive, of the Constitution. There was nothing in the title of this act (chapter 93, Sess. Laws 1913) expressly stating that it was an amendment of the Constitution. Appeals involving order of the Commission fixing rates of utilities under authority of chapter 93, Sess. Laws 1913, have been before this court repeatedly, and in each instance this court has reviewed the cases legislatively. See Oklahoma Nat. Gas Co. v. Corp. Com., 90 Okla. 84, 216 P. 917; McAlester Gas & Coke Co. v. Corp. Com., 101 Okla. 268, 224 P. 698; McAlester Gas & Coke Co. v. Corp. Com., 102 Okla. 118, 227 P. 83; City of Poteau v. American Indian O. & G. Co., 159 Okla. 240, 304, 18 P. (2d) 523.

Amendments of sections 18 to 34, inclusive, article 9 of the Constitution, by acts of the Legislature passed pursuant to provisions of section 35 of the article, have been recognized by this court for nearly 20 years, notwithstanding the fact that in none of the legislative acts has the title to the act contained express words showing the intention of the Legislature to amend the Constitution.

I do not think that the opinion of the court is correct for another reason. The proceeding before the Corporation Commission in which the order complained of herein was entered was administrative. The appellants contend that the ginning rate, prescribed by the Corporation Commission is confiscatory and invades their constitutional rights. This court has held that its review of the order of the Commission complained of is judicial, but notwithstanding that fact, has based its conclusions on the record made before the Commission in the administrative proceeding, and has afforded the appellants no opportunity to offer evidence in this court that the legislative order of the Commission has invaded its constitutional rights. In my opinion, the appellants were entitled to such an opportunity. Crowell v. Benson, 285 U. S. 22, 52 S. Ct. 285. 296, 76 L. Ed. 598; Ohio Valley Water Co. v. Ben Avon Borough, 253 U. S. 287, 40 S. Ct. 527, 64 L. Ed. 908.

True, section 22, article 9 of the Constitution, provides:

"In no case of appeal from the Commission, shall any new or additional evidence be introduced in the Supreme Court."

And I am of the opinion effect should be given to that provision. That cannot be done, however, unless we act legislatively on the appeal. If we say our review of rate orders of the Commission is judicial, we must strike down the constitutional inhibition against the introduction of new and additional evidence in this court, and permit the introduction of such evidence; otherwise we deprive plaintiff of constitutional rights guaranteed to it under the due process clause of the federal Constitution.

Plaintiff contends, correctly I think, that the majority opinion strikes down that part of section 22, art. 9, which reads:

"Provided however, that the action of the Commission appealed from shall be regarded as prima facie just, reasonable, and correct."

In Crowell v. Benson supra, Chief Justice Hughes speaking for the court, said:

"In cases brought to enforce constitutional rights, the judicial power of the United States necessarily extends to the independent determination of all questions, both of fact and law, necessary to the performance of that supreme function. The case of confiscation is illustrative, the ultimate conclusion almost invariably depending upon the decisions of questions of fact. This court has held the owner to be entitled to 'a fair opportunity for submitting that issue to a judicial tribunal for determination upon its own independent judgment as to both law and facts.' Ohio Valley Water Co. v. Ben Avon Bor-

ough, supra. See, also, Prendergast v. New York Telephone Co., 262 U. S. 43, 50, 43 S. Ct. 466, 67 L. Ed. 853; Tagg Bros. & Moorhead v. United States, supra (280 U. S. 420, 50 S. Ct. 220, 74 L. Ed. 524); Phillips v. Commissioner, 283 U. S. 589, 600, 51 S. Ct. 608, 75 L. Ed. 1289."

In a judicial review of rate orders of the Commission, we cannot accord to such orders the presumption of correctness prescribed by our Constitution and at the same time exercise our independent judgment as to both the law and the facts as required by the due process clause of the federal Constitution.

For the reasons stated, I most respectfully dissent.